UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEBRA QUINN,

        Plaintiff,

v.

CITY OF VANCOUVER, et al.,

        Defendants.

CASE NO. C17-5969 BHS

ORDER DENYING DEFENDANTS' MOTIONS FOR RECONSIDERATION

This matter comes before the Court on Defendant Bronson Potter's ("Potter") motion for reconsideration, Dkt. 175, Defendant Jonathan Young's ("Young") motion for reconsideration, Dkt. 176, and Defendant the City of Vancouver's ("City") motion for reconsideration, Dkt. 177.

## I. PROCEDURAL HISTORY

On August 21, 2019, the Court granted in part and denied in part Potter, Young, the City, and Defendant Eric Holmes's ("Holmes") motions for summary judgment. Dkt. 170. On September 4, 2019, Potter, Young, and the City each moved for reconsideration. Dkts. 175, 176, 177.

The facts of the case are set forth in the Court's order on the motions for summary judgment. Dkt. 170.

## II. DISCUSSION

Motions for reconsideration are governed by Local Rule 7(h), which provides as follows:

> Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.

Local Rules W.D. Wash. LCR 7(h). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

In this case, Potter, Young, and the City each move for reconsideration on the basis that the Court committed manifest errors of law.

**A.    Potter's Motion**

Potter asks the Court to reconsider its decision to deny his motion for summary judgment as to Plaintiff Debra Quinn's ("Quinn") disparate treatment claim against him. Dkt. 175 at 1.

Quinn alleged Potter subjected her to disparate treatment on the basis of gender when Potter decided to promote Young instead of Quinn to the Chief Assistant City Attorney position in 2014. Potter argues that the Court committed manifest error by relying on inadmissible hearsay to establish an inference that discrimination was a substantial factor motivating Potter's decision. Dkt. 175 at 2. In their joint motion for

summary judgment, Potter and Young made evidentiary objections on a substantial number of issues in the case. Dkt. 134 at 2 n.1. The Court explained that on summary judgment, a court may consider evidence that "could be presented in an admissible form at trial. Dkt. 170 at 43 (quoting *Fraser v. Goodale*, 342 F.3d 1031, 1037 (9th Cir. 2003)). The Court also explained that Fed. R. Civ. P. 56(c)(2) permits a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." *Id*.

First, Potter argues that the Court improperly relied on Quinn's testimony that Chief Molina told her Potter made a negative comment about her during an interview panel in the hiring process for the position. Dkt. 175 at 3. Potter argues that Quinn had "ample opportunity to obtain a sworn declaration from Chief Molina or to take his deposition to present such evidence to the court," or produce a text message Quinn said she received from Chief Molina. *Id*. The Court is not persuaded nor does Potter provide authority establishing that it is clear error to consider evidence that could be admissible because an opposing party failed to obtain and submit the evidence in an admissible form for purposes of summary judgment. At the very least, the statement may not be hearsay because it was made by an opposing party's agent, Fed. R. Evid. 801(d)(2), and Chief Molina was on Quinn's witness list, Dkt. 158 at 5. Thus, the hearsay objection could be without merit.

Second, Potter argues that the evidence supporting an inference that gender discrimination was a substantial factor motivating Potter's decision was too weak to create a question of fact. *Id*. at 4. The Court relied on Potter's reference to a female

colleague as "the one with the big tits," the above-discussed evidence that Potter made a negative comment about Quinn in the hiring process, and the fact that Potter abandoned the formal hiring process in favor of Young when Quinn and another candidate, Dan Lloyd, were each the preferred candidate of one hiring panel at the final stage. Dkt. 170 at 45.

Potter argues that the evidence in the case at bar is substantially similar to the evidence supporting the plaintiff's age discrimination claim in *Mikkelsen v. Pub. Utility Dist. No. 1. of Kittitas Cty*, 189 Wn.2d 516, 536 (2017) where the Washington Supreme Court affirmed the trial court's summary judgment dismissal of the claim "because *Mikkelsen* presented almost no evidence of age discrimination." Dkt. 175 at 4. In *Mikkelsen*, the Washington Supreme Court explained the plaintiff presented no evidence the defendant treated older employees differently or that her age played a role in the defendant's decision to fire her. *Mikkelsen*, 189 Wn.2d at 536. The Washington Supreme Court found that statements the plaintiff cited as evidence of bias "suggest[ed] that [the defendant] was simply marveling that some employees had worked for the same employer for so long." *Id*. In the case at bar, the Court found that Potter's statement cited as evidence of bias was objectively vulgar and offensive. Dkt. 170 at 53. While Potter again argues that his decision to abandon the formal hiring process "clearly arose from the conflicting recommendations of the two interview panels," this argument does not establish that the Court clearly erred when it decided that reasonable juror could conclude Potter's actions were evidence of gender bias. *See* Dkt. 170 at 45. "Summary judgment for an employer is seldom appropriate in employment discrimination cases because of the

difficulty of proving discriminatory motivation." *Mikkelsen*, 189 Wn.2d at 527 (citing *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 445 (2014)). "Where there are reasonable but competing inferences of both discrimination and nondiscrimination, the trier of fact must determine the true motivation." *Id.* at 528 (citing *Scrivener*, 181 Wn.2d at 445).

The Court concludes that Potter's disagreement with the Court about what constitutes reasonable characterization of the facts in this case simply does not establish that the Court committed manifest error. Therefore, the Court denies Potter's motion for reconsideration.

**B.      Young's Motion**

Young asks the Court to reconsider its decision to deny his motion for summary judgment as to Quinn's retaliation claim against him. Dkt. 176 at 1.

Quinn alleged Young retaliated against her for objecting to discrimination when he and Potter placed Quinn on administrative leave. The Court found "a juror could reasonably infer that if [Potter and Young's] reasons for placing Quinn on leave in such a dramatic fashion were free from retaliatory motivation, she would have received at least some minimal corrective action upon return." Dkt. 176 at 2. In other words, it may seem reasonable to place an employee on leave with pay while conducting a timely investigation into the alleged misconduct and informing the employee of the misconduct prior to placing the employee on leave. However, the evidence in this case suggests an unusual amount of anger, animosity, and potentially bias in reaching the widely communicated decision to place Quinn on leave that was not supported with any subsequent explanation upon Quinn's return to work. Young argues this conclusion is not

reasonable and is "contrary to the evidence reflecting his intent and actions." *Id*. at 3. The Court does not disagree that Young puts forward strong evidence from his depositions and declaration that his decision to put Quinn on leave had exclusively legitimate motivation—his serious concern that Quinn's strange behavior indicated she might harm the City's legal interests. *Id*.

However, the fact remains that when Potter and Young met with Quinn on November 12, 2015 and asked her about her strange behavior, she began yelling at Potter about his gender discrimination. *See* Dkt. 170 at 49. Potter and Young then decided to place Quinn on administrative leave and announced the leave to her colleagues and clients. *Id*. at 13. On the facts before the Court, Potter and Young announced Quinn's leave in a manner suggesting she had done something seriously wrong before, as Young now argues, they were able to accomplish "the point of administrative leave [] to allow time to gather information, avoid a rush to judgment . . . ." Dkt. 176 at 5. While the announcement suggested to others that Quinn had done something seriously wrong, she was never disciplined. Dkt. 170 at 49. A reasonable juror may more likely credit Young's consistent testimony that he was exclusively motivated by his belief Quinn represented a threat to the City's legal interests and acted in proportion to his concerns. On the other hand, a reasonable juror *could instead* credit Quinn's version of events, that when she protested Potter's discrimination to Potter and Young, Potter and Young were substantially motivated by her protests to immediately put her on administrative leave and make an announcement suggesting she had done something seriously wrong, an announcement that was not substantiated by a later finding.

The Court does not find that it committed manifest error when it decided a reasonable juror could conclude that retaliation was a substantial motivation for Young's conduct in this series of events. Therefore, the Court denies Young's motion for reconsideration. If Young wishes to explore this issue more fully so that both Quinn and the Court may have the benefit of complete briefing, he may do so prior to the new dispositive motions deadline in this case.

**C.     The City's Motion**

The City asks the Court to reconsider its decision to deny summary judgment as to Quinn's negligent supervision claim and her equal protection claim against the City. Dkt. 177 at 1.

First, Quinn alleged that the City was liable for negligent supervision of Potter by Holmes. The Court concluded regarding Holmes's potential liability for negligent supervision that "[w]hile it is a close question whether knowledge that Potter had made the 'bitch' and 'wig' comments could place Holmes on notice of a risk that Potter would 'fraudulently' place Quinn on leave, and whether Holmes's failure to reprimand Potter for these comments could have proximately caused Potter's actions to place Quinn on leave, [on the authorities before the Court] these questions are also questions of fact." Dkt. 170 at 42. On this basis, and on the City's failure to persuade the Court that whether Potter's actions fell outside the scope of employment was a matter of law for the Court, the Court found the City could also be liable on this claim. *Id*. at 62–63. The City now argues there is no evidence from which a juror could conclude Potter's actions were outside the scope of his role as City Attorney, because his decision to place a subordinate

employee on leave was "unequivocally within the scope of Mr. Potter's authority as the City Attorney." Dkt. 177 at 2.

The Court declines to revise its previous conclusion that whether Potter's alleged abuse of his authority in acting adversely to a subordinate for retaliatory reasons was within the scope of his employment is a question of fact. *See* Dkt. 170 at 62–63. The City also argues that even if Potter's actions were outside the scope of his employment, Quinn's claim for negligent supervision would fail because "[t]here is no case law in Washington recognizing the existence of a special relationship between an employer and an employee." Dkt. 177 at 4. While generally there is no duty in tort to protect third parties, the "theory of negligent supervision creates a limited duty to control an employee for the protection of third parties, even where the employee is acting outside the scope of employment." *Niece v. Elmview Group Home*, 131 Wn.2d 39, 52 (1997). Moreover, the Washington Supreme Court recently affirmed a plaintiff's right to pursue claims "under alternative, even inconsistent, theories of recovery." *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 612 (2019). Therefore, the Court does not find its decision was manifest error. If the City wishes to explore this issue more fully so that both Quinn and the Court may have the benefit of complete briefing, it may do so prior to the new dispositive motions deadline in this case.

Second, the City requests that the Court reconsider its decision to deny the City's summary judgment motion on Quinn's equal protection claim. The City moved for summary judgment on this claim without citation to a single authority. Dkt. 107 at 5–6. In relevant part, the City argued without support that "Ms. Quinn cannot point to any

state law or local government ordinance that interferes with or subjects her to differential treatment, a hostile work environment, or retaliation." *Id.* at 6. Quinn responded by citing some authorities regarding supervisor liability and arguing that she "has produced copious evidence that Holmes, Potter, and Young intentionally discriminated against her as a woman under color of law in refusing to promote her and in retaliating against her for reporting gender discriminatory conduct." Dkt. 126 at 24–25. In reply, the City again failed to cite any authority and argued that Quinn failed to identify "a City of Vancouver policy or ordinance that discriminates against her on the basis of her status as a member of a legally protected class." Dkt. 133 at 3. The Court denied the City's motion stating that the City argument requiring a policy or ordinance is "not the standard." Dkt. 170 at 65.

Although the City moves for reconsideration on this claim, it fails to clearly articulate the basis for its argument. It appears that the City could be arguing that Quinn has failed to support a municipal liability claim against the City under *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Even then, there are ways to establish a *Monell* claim without identifying a written municipal policy. *See, e.g.*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("the Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'") (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). Thus, the City has failed to show that the Court committed a manifest error of law in denying its conclusory and unsupported motion on this issue. If

the City intends to file another dispositive motion on this issue, the Court requests that the City completely articulate the basis for its motion and cite authorities supporting its propositions of law. Otherwise, the City leaves Quinn and the Court guessing at the basis for the motion.

### III. ORDER

Therefore, it is hereby **ORDERED** that Potter's motion for reconsideration, Dkt. 175, Young's motion for reconsideration, Dkt. 176, and the City's motion for reconsideration, Dkt. 177 are **DENIED**.

Dated this 10th day of September, 2019.

BENJAMIN H. SETTLE
United States District Judge