1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10   DEBRA QUINN,

11              Plaintiff,

12        v.

13   CITY OF VANCOUVER, *et al.*,

14              Defendants.

CASE NO. 3:17-cv-05969-BHS

REPORT AND
RECOMMENDATION

NOTED FOR:  January 22, 2021

15

16        Plaintiff, an attorney, is suing her former employer and client, defendant City of

17   Vancouver ("defendant City"), among others.  She claims that she was the victim of gender

18   discrimination, harassment, and retaliation.  While still employed, and for some time thereafter,

19   unbeknownst to defendant City, she communicated with current and former City employees

20   about her claims and theirs against the City.  Throughout discovery in this case, plaintiff has

21   attempted to conceal the extent of these communications by falsely testifying under oath, failing

22   to disclose the existence of these communications, and asserting unfounded privileges—all in

23   violation of the Federal Rules of Civil Procedure and specific orders issued by this Court.

24

Defendant City has now brought a motion for sanctions against plaintiff for alleged discovery violations, including willfully disobeying this Court's discovery orders.  Dkt. 256. Defendant City's motion for sanctions (Dkt. 256) has been referred to the undersigned by the District Court.  *See* Dkt.

Having been involved in addressing plaintiff's discovery conduct over the course of 11 months, and after deferring ruling on defendant City's requested sanctions, this Court now recommends the imposition of both monetary and non-monetary sanctions to reflect the seriousness of plaintiff's discovery misconduct, further discussed herein.  Plaintiff should be ordered to pay $34,790.00 in attorney's fees and $16,053.66 in expenses to defendant City, which should be immediately payable, but payment may be delayed until a final judgment is rendered in this case.  The Court further recommends that any final award in favor of plaintiff be paid into the registry of the Court for purposes of satisfying any unpaid portions of the award of sanctions.

Defendant City's request for the ultimate sanction—dismissal of plaintiff's claims with prejudice—should be denied because defendant City has not demonstrated that it cannot be fully prepared to defend this case on its merits.  However, for the purposes of this litigation, the Court recommends that certain facts regarding plaintiff's conduct be designated as proven, as set forth below.

Defendant City has filed a renewed motion to dismiss for plaintiff's alleged violation of the Rules of Professional Conduct.  Dkt. 264.  The parties have also filed motions for summary judgment.  Dkts. 260, 262, 266, 268.  Because the outcome of defendant City's renewed motion to dismiss may depend, in part, on the District Court's ruling on this motion for sanctions (Dkt.

1    256), the undersigned also directs the Clerk to renote the remaining pending motions until after

2    the District Court has entered its order on the motion for sanctions.

3    **PLAINTIFF'S REQUEST TO POSTPONE RULING**

4        As an initial matter, plaintiff requests that the Court postpone ruling on defendant City's

5    motion for sanctions (Dkt. 256) until resolution of a separate state court action by plaintiff

6    against defendant City regarding disclosures under Washington State's Public Records Act,

7    RCW 42.56.001 *et seq.*   *See* Dkt. 273, at 16–17.  Defendant City opposes any stay.  *See* Dkt.

8    280, at 4–5.

9        Plaintiff has not shown that any conduct by defendant City in that case is related to the

10    present motion for sanctions based on *plaintiff's* discovery conduct in this case.  Further, plaintiff

11    has not articulated any harm or inequity she may suffer if the Court rules now on defendant

12    City's motion for sanctions.  *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)

13    (discussing the interests to be weighed in considering whether to stay a proceeding).  Therefore,

14    the Court recommends denying plaintiff's request to defer ruling on defendant City's motion for

15    sanctions.

16    **DISCUSSION**

17        In considering defendant City's motion for sanctions (Dkt. 256), the Court begins by

18    discussing the history of the parties' discovery disputes and plaintiff's conduct in this matter,

19    specifically:  (1) plaintiff's false deposition testimony; (2) plaintiff's failure to disclose

20    discoverable communications in response to defendants' valid discovery requests and failure to

21    provide a privilege log; (3) plaintiff's violation of this Court's discovery orders; and (4)

22    plaintiff's withholding of discoverable communications on the basis of asserted privileges that

23    clearly do not apply.  The Court will then discuss defendant City's requested sanctions.

24

I.    **Plaintiff's Discovery Violations**

A.    **Plaintiff's Initiation of Litigation and Her September 2018 Deposition Testimony**

At the time of filing suit, on November 21, 2017, plaintiff was an Assistant City Attorney for her employer and client, defendant City, and was under the supervision of defendants Eric Holmes, Bronson Potter, and Jonathan Young.  Dkt. 1, at 4; Dkt. 256, at 2.  In her initial complaint, plaintiff claimed that defendants subjected her to unlawful gender discrimination, hostile work environment, and retaliation for making discrimination complaints.  *See* Dkt. 1.

On September 11, 2018, plaintiff testified at her first deposition in this case.  *See* Dkt. 244-3.  Plaintiff gave the following deposition testimony under oath:

Q:  Have you ever encouraged any current employee of the City to file an internal complaint?

A:  No.

Q:  Have you ever encouraged any current City employee to file a lawsuit against the City claiming discrimination?

A:  No.

Q: Have you encouraged any former employee of the City to file a complaint of discrimination against the City?

A:  No.

Q:  Have you ever encouraged any former employee of the City to file a complaint with the Equal Employment Opportunity Commission?

A:  No.

Dkt. 244-3, at 2.   Now, more than two years later, after a tortured battle for information, the Court and defendants have learned that this testimony was false.  At the time of the September 2018 deposition and thereafter, plaintiff had in fact encouraged current and former City employees to bring claims of discrimination against the City and offered advice on how to

1    proceed.  Plaintiff had even provided documentation to assist these employees in their efforts—

2    communications that plaintiff concealed from defendants—and this Court.

3         For instance, on October 20, 2017, plaintiff sent an email to former City employee Karen

4    Reed suggesting, "I am wondering if you sent the EEOC a copy of the whistle blower complaint,

5    if it would help you.  They seem to want to know about other affected women."  Dkt. 265-11.

6         Additionally, on July 11, 2018—three months before her deposition testimony—plaintiff

7    sent a text message to current City employee Julie Ballou about Ms. Ballou's allegations of

8    discrimination against the City.  Plaintiff wrote, "You should talk to [an attorney] about this, but

9    I am not sure you should agree to let the City investigate.  Just go directly to the EEOC."  Dkt.

10   285-3, at 1.  Several days later, plaintiff again texted Ms. Ballou, "Don't hold off on any action

11   because you want to wait until the investigation is done."  *Id.* at 2.  Also in July 2018, plaintiff

12   sent a text message cautioning Ms. Ballou:  "One thing to keep in mind is you likely want to file

13   an EEOC complaint within I think 180 days of the action.  You have time but keep it in mind."

14   Dkt. 285-3, at 2; *see also* Dkt. 285-3, at 3 ("Look at RCW 4.96.020[.] . . .  It is critical [your

15   attorney] serves [the tort claim] on the right people.").

16        These are examples of documents that were later revealed and that demonstrate that at the

17   time of her September 2018 deposition, plaintiff had already encouraged current or former City

18   employees to pursue discrimination claims against defendant City.  Further, in January 2019,

19   after she had provided this false testimony but while she was still employed by the City, plaintiff

20   continued to email Ms. Reed.  Plaintiff shared City documents, including City personnel files,

21   policy documents, and internal communications—all of which were sent less than two months

22   before Ms. Reed filed suit against defendant City.  *See* Dkt. 194-6, at 5,14, 16–20, 24–26.

23

24

Whether these communications violated plaintiff's professional obligations to her client, defendant City, is the subject of another motion (*see* Dkt. 264) and will not be further addressed here.  As an attorney, however, plaintiff should have been well aware of her legal duty to testify truthfully.  *See* Fed. R. Civ. P. 30(c) ("The examination . . . of a deponent proceed[s] as [it] would at trial . . . [and] the deponent [is] under oath or affirmation."); Fed. R. Evid. 603 ("Before testifying, a witness must give an oath or affirmation to testify truthfully.").  Plaintiff's testimony—in light of later-disclosed documents—was false.

**B.    Plaintiff's Failure to Disclose in Response to Defendant Holmes' RFP No. 13**

Plaintiff also concealed communications she had with others about her own claims against the City, even though defendants validly requested this information.  Specifically, on December 20, 2018, defendant Holmes propounded Request for Production ("RFP") No. 13:

> Produce copies of all postcards, cards, letters, emails, text messages, social media messages . . . , or other communications that you have sent or received from [35 individuals, including Karen Reed and Julie Ballou] and any other person that relate to your allegations of discrimination, retaliation, outrage, negligent supervision, breach of implied contract, violations of the First Amendment, violation of equal protection, hostile work environment, the City of Vancouver's culture, or this litigation.

Dkt. 257-4, at 2.  On January 18, 2019, plaintiff objected to defendant Holmes' request but stated that she would produce non-privileged, responsive documents currently in her possession, custody, or control.  *Id.*  But she did not.  Months went by, and plaintiff failed to produce any documents, nor did she provide a privilege log to disclose the nature of any documents she was withholding.

As the Court and defendants would later learn, plaintiff did indeed possess a number of responsive documents, dating back to 2017, which she withheld without explanation and without preparing any form of privilege log, so that at least the existence of any such documents could be

1    reviewed and evaluated by defendants and the Court.  The following is a small sampling of

2    documents that finally came to light years later and after multiple motions and hearings that will

3    be described further, *infra*.  Plaintiff sent the following email to Ms. Reed in August of 2017:

4        [T]he EEOC finally contacted me to say they are planning to dismiss my case. . . .
         They said comments made by [defendant Potter] were not severe or pervasive

5        enough to qualify as harassment.  They also said that because [defendant Potter]
         had a reason to put me on paid admin [sic] leave, there was no retaliation.

6    Dkt. 265-6.  In October 2017, plaintiff again wrote to Ms. Reed, "[H]ere is the City's reply to my

7    whistle blower and tort claim notice! . . . I will likely file suit in November."  Dkt. 265-11.  In

8    August of 2018, plaintiff sent a text message to Ms. Ballou, "If you want to give me your email I

9    will send you a copy of the investigation the City just did."  Dkt. 285-3, at 2 (further discussing

10   plaintiff and Ms. Ballou's complaints against defendant City).  None of these emails were

11   disclosed in response to RFP 13.

12       These documents and others make clear that plaintiff was concealing validly requested

13   information.  Plaintiff maintains that she was not required to reveal these documents and that she

14   was not even required to produce any privilege log in connection with these communications

15   because the communications were prepared after she had filed suit against the City.  Dkt. 273, at

16   8–10.  But at the time of responding to defendant Holmes' RFP No 13, plaintiff failed to provide

17   *any* privilege log—even for communications that occurred *before* the commencement of

18   litigation.  *See, e.g.*, Dkts. 265-6, 265-10, 265-11, 265-13, 265-14, 265-36 (August 2017 to

19   November 2017 emails exchanged with Ms. Reed discussing plaintiff's claims against

20   defendants and this litigation).  So, she had no reason for failing to prepare a privilege log at least

21   for those documents.

22       As for documents prepared after the initiation of litigation, plaintiff's argument is also

23   flawed.  Certainly, parties may agree that no privilege log is necessary for communications dated

24

after the commencement of litigation.  However, to the Court's knowledge, there was no such

agreement between the parties here.  Nor does the Rule requiring the preparation of a privilege

log distinguish between communications occurring before and after litigation is commenced.

*See* Fed. R. Civ. P. 26(b)(5)(A) ("When a party withholds information otherwise discoverable by

claiming that the information is privileged or subject to protection . . . , the party must:  (i)

expressly make the claim; and (ii) describe the nature of the documents, communications, or

tangible things not produced or disclosed—and do so in a manner that . . . will enable other

parties to assess the claim.").  Plaintiff has not identified, nor is this Court aware of, any Ninth

Circuit case holding that a party need not prepare a privilege log for communications with third

parties occurring after litigation is commenced.  Indeed, courts in this Circuit have only drawn

such a line for communications between a party and her counsel.  *See, e.g.*, *Ryan Inc. Corp. v.*

*Pedregal de Cabo San Lucas*, No. C 06-3219 JW (RS)., 2009 WL 5114077, at *3 (N.D. Cal.

Dec. 18, 2009) (denying motion to compel a log of post-litigation *counsel* communications and

work product, but compelling a party to provide a privilege log for "any other materials withheld

on privilege grounds"); *see also Grider v. Keystone Health Plan Central, Inc.* 580 F.3d 119, 139

n. 22 (3d Cir. 2009) ("[A] privilege log may not be required for communications *with counsel*

that takes place after the filing of a lawsuit."  (emphasis added)).  In this case, the majority of

documents that plaintiff concealed and failed to disclose in a privilege log were not

communications between her and her attorney, but with third parties, such as current and former

employees of the City.  Further, this case presents a unique situation where plaintiff remained

employed by defendant City—her client—after she filed suit and where she continued to

communicate with former and current City employees—none of whom are co-parties to this

litigation—regarding plaintiff's claims and those individuals' claims against defendant City.

The purpose of a privilege log is to disclose the existence of otherwise discoverable information withheld under a claim of privilege so that the opposing party and the Court can have an opportunity to evaluate whether an asserted privilege is appropriate. Plaintiff deprived defendants and the Court of that opportunity by failing to produce any privilege log. Without any privilege log, there was no way for defendants to challenge plaintiff's asserted privileges for withholding those documents.

And as defendants and this Court learned, and as discussed in greater detail below, most of plaintiff's belatedly asserted privileges *did not* shield the disclosure of plaintiff's responsive and discoverable documents. Having now reviewed many of the documents withheld, it is clear that plaintiff used the purported work-product and common interest doctrines to conceal the existence of those documents—not to assert any good faith legal theory of protection over these documents.

Under these circumstances, the Court finds that plaintiff violated her duty to provide a privilege log under Fed. R. Civ. P. 26(b)(5)(A). The Court further finds that plaintiff failed to supplement defendant Holmes' RFP No. 13 pursuant to Fed. R. Civ. P. 26(e), which requires plaintiff to supplement or correct a response to a request for production "in a timely manner if [she] learns that in some material respect the . . . response is incomplete or incorrect," or "as ordered by the court."

### C.    Plaintiff's June 2019 Deposition Testimony

The saga continues.

On June 3, 2019, plaintiff testified at a second deposition. *See* Dkt. 257-2. At that deposition, plaintiff testified—under oath—that she never encouraged former City employee Ms. Reed to file a lawsuit against defendant City, stating "[t]hat was purely her decision, I did not

1    encourage her." *Id.*, at 6.  However, at the time of her second deposition—as the Court and

2    defendants would later learn—plaintiff had in fact exchanged multiple emails with Ms. Reed

3    beginning in August 2017 through January 2019, discussing Ms. Reed's EEOC complaint

4    against defendant City (*see, e.g.*, Dkts. 194-6, at 2; 194-8, at 5–7; 265-11; 265-12); sharing City

5    personnel files, policy documents, and internal communications (*see* Dkts. 194-6, at 5,14, 16–20,

6    24–26); and agreeing to be a witness in support of Ms. Reed's EEOC complaint.  *See* Dkt. 194-8,

7    at 6 ("Absolutely you can use me as a witness.").  Indeed, even Ms. Reed thanked plaintiff for

8    her "encouragement."  Dkt. 265-12 ("[t]hank you for your encouragement.").  Plaintiff's

9    testimony that she never encouraged Ms. Reed to file suit or bring a complaint of discrimination

10    against defendant City—in light of later-disclosed documents—was false.  *See* Fed. R. Civ. P.

11    30(c); Fed. R. Evid. 603.

12                **D.**      **Plaintiff's November 2019 "Out of the Blue" Production**

13          In March 2019, Ms. Reed separately sued defendant City.  *See Reed v. City of Vancouver*,

14    Case No. 3:19-cv-05182-RJB, Dkt. 1 (W.D. Wash. March 8, 2019).  In fall 2019, several months

15    after plaintiff's second deposition, Ms. Reed produced to defendant City redacted emails

16    exchanged between Ms. Reed and plaintiff from August 2017 to November 2018 regarding her

17    and plaintiff's claims against defendant City.  *See* Dkt. 196-8.  Around the same time, and in yet

18    another separate lawsuit filed by current City Ms. Ballou, Ms. Ballou produced to defendant City

19    text messages exchanged between her and plaintiff regarding each's claims against defendant

20    City.  *See* Dkt. 196-7; *Ballou v. McElvain*, Case No. 3:19-cv-05002-JLR (W.D. Wash. Jan. 1,

21    2019).

22          Ms. Ballou and Ms. Reed's productions in fall 2019 were the first time that these

23    documents had come to light.  Up to this time, despite defendant Holmes' RFP No. 13 requesting

24

1    communications exchanged with Ms. Reed and Ms. Ballou regarding plaintiff's claims and this

2    litigation, plaintiff had not previously produced nor disclosed the existence of any of these

3    documents.

4         On November 22, 2019—apparently "out of the blue"—plaintiff provided a supplemental

5    response to defendant Holmes' RFP No. 13, producing nearly identical and redacted emails and

6    text messages previously disclosed by Ms. Reed and Ms. Ballou in their separate litigations.  *See*

7    Dkts. 194-6 (2018 emails exchanged with Reed regarding plaintiff's claims and this litigation);

8    285-2 (undated text messages exchanged with Ballou regarding plaintiff's claims and this

9    litigation).  Plaintiff provided no explanation for her 11-month delay in responding to defendant

10   Holmes' RFP No. 13, nor did she explain why she had failed to prepare a privilege log at least

11   acknowledging these communications' existence.  And, as the Court later learned through

12   defendant City's motion for sanctions (Dkt. 256) and supporting exhibits (Dkts. 265, 287),

13   plaintiff continued to withhold—again without any privilege log—additional responsive

14   documents that had not been disclosed by Ms. Reed and Ms. Ballou.  *See, e.g.*, Dkts. 265-6, 265-

15   11, 265-36 (copies of emails exchanged with Reed regarding plaintiff's claims); 285-3

16   (unredacted copies of text messages exchanged with Ballou regarding the same).

17        As noted above, plaintiff has a duty to supplement or correct a response to a request for

18   production "in a timely manner if [she] learns that in some material respect the . . . response is

19   incomplete or incorrect," or "as ordered by the court."  Fed. R. Civ. P. 26(e)(1).  Here, it is clear

20   that plaintiff should have produced these responsive documents before November 2019 and that

21   she failed to supplement her response to defendant Holmes' RFP No. 13 in a timely manner.

22   And, as previously discussed, she failed to provide any privilege log as required by Fed. R. Civ.

23   P. 26(b)(5).

24

On December 1, 2020, during oral argument on the motion for sanctions (Dkts. 265, 288), plaintiff admitted that she withheld responsive emails and text messages that were written before November 2019.  However, she asserted that she did so because these communications were purportedly protected and withheld under the work-product and common interest doctrines. Plaintiff contended that Ms. Reed and Ms. Ballou's productions in the fall of 2019 waived any asserted privilege.  Therefore, plaintiff subsequently supplemented her response to defendant Holmes' RFP No. 13.  However, this account does not explain plaintiff's failure to provide a privilege log prior to her supplemental response, acknowledging the existence of such documents and the basis for withholding them.  *See* Fed. R. Civ. P. 26(b)(5).  Indeed, it appears that plaintiff failed to provide any privilege log regarding responsive documents until compelled to do so by this Court on April 6, 2020 (*see* Dkt. 221), and then ordered again on June 16, 2020.  *See* Dkt. 238.  Further, it fails to explain plaintiff's continued concealment of other responsive documents until compelled to do so by this Court.

Finally, plaintiff's arguments for asserting privilege based on the work-product and common interest doctrines over many of these documents are ill-founded.  The work-product doctrine is a "qualified privilege" that protects "from discovery documents and tangible things prepared by a party or [her] counsel in anticipation of litigation."  *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)(A)).  This qualified privilege clearly does not apply when such information is shared with third parties, such as Ms. Reed and Ms. Ballou, because such disclosures "substantially increased the opportunities for potential adversaries to obtain the information."  *United States v. Sanmina Corp.*, 968 F.3d 1107, 1121 (9th Cir. 2020) (citation omitted).  Indeed, Ms. Reed and Ms. Ballou recognized that such documents were not protected communications and disclosed

1  the emails and text messages to defendant City—plaintiff's opponent—in response to valid

2  discovery requests. *See* Dkts. 194-7, 194-8. Instead, these communications were more along the

3  lines of sharing litigation news (*see, e.g.*, Dkt. 194-6, at 1 (discussing that defendants did not

4  make any motion to dismiss in this litigation), *id.* at 2 (Reed discussing the "Me Too Movement"

5  and gender discrimination); Dkt. 285-2, at 1–2 (naming defendants' attorneys in this litigation)),

6  which would hardly qualify as work product.

7      Plaintiff also claims that such communications were protected under the "common

8  interest" doctrine. This applies when "the parties [] make the communication in pursuit of a joint

9  strategy in accordance with some sort of agreement—whether written or unwritten." *In re Pac.*

10 *Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). Although plaintiff apparently approached

11 at least Reed about pursuing some "joint strategy" (Dkt. 265-12, at 1), plaintiff has come forward

12 with no evidence showing that there was an actual agreement—whether written or unwritten—to

13 pursue a joint legal strategy prior to her disclosure of any alleged protected work product with

14 either Reed or Ballou. *See In re Pac. Pictures Corp.*, 679 F.3d at 1129. And how odd it would

15 be that she would have entered into an agreement with these third parties to pursue a common

16 defense against her own client. *See* Dkt. 186, at 4, 8 (reflecting that plaintiff remained employed

17 by and continued to represent defendant City at the time of these communications). Simply put:

18 plaintiff's asserted privileges do not shield the long-withheld communications with Ms. Reed

19 and Ms. Ballou, and plaintiff's failure to timely produce those documents—or at least produce a

20 privilege log—is in violation of Fed. R. Civ. P. 26(e).

21      **E.      Plaintiff's Failure to Disclose in Response to Defendant City's RFP No. 12**

22

23      Shortly after plaintiff's November 2019 supplemental response to defendant Holmes'

24 RFP No. 13, defendant City propounded its own RFP No. 12, requesting "full and complete

1  copies of every text message exchanged between [plaintiff] and [certain] persons," including Ms.

2  Reed and Ms. Ballou, "which related to or referred to that person's claims against the City of

3  Vancouver." Dkt. 194-2, at 13. On December 23, 2019, plaintiff responded that she had already

4  provided all non-privileged, responsive documents to defendants. *See id.* at 14. As the Court

5  and defendants would later learn, plaintiff's response was not entirely true. While she had

6  produced some such documents, she continued to withhold redacted portions of text messages

7  that were responsive to defendant City's RFP No. 12 and were not protected by any privilege.

8  *See* Dkt. 285-3, at 1 (July 9, 2018, text message from Ms. Ballou to plaintiff: "I sent an email

9  today to [defendant] Holmes and chief telling them, in summary, that I believe I'm the victim of

10  discrimination and have been advised to get an attorney but would like to not have to. I didn't

11  realize you also had a complaint against him."); *id.* at 1 (another text message from Ms. Ballou to

12  plaintiff on July 9, 2018: "Did you have issues with attorneys telling you because haven't been

13  fired or repeatedly passed over they aren't excited to take a case? Seems to be a theme with

14  me."); *id.* at 2 (July 14, 2018, text message from Ms. Ballou to plaintiff: "[Y]es I'll file with

15  eeoc [sic] also because I'm not satisfied that whoever does my investigation will be fair.").

16      On January 15, 2020, plaintiff provided a supplemental response to defendant City's RFP

17  No. 12, again stating that she had already produced all non-privileged, responsive documents to

18  defendants and that any privileged documents were reflected on a privilege log previously

19  provided to defendants. *See* Dkt. 194-3, at 14. But plaintiff has not provided any such privilege

20  log that she allegedly sent to defendants. Defendant City contends that plaintiff has neither

21  provided any privilege log with her supplemental response (*see* Dkts. 194, at 2; 244, at 2), nor

22  identified any privilege log previously produced to defendants reflecting any potentially

23  responsive documents. Further, as noted above, neither the work-product nor the common

24

1    interest doctrines were implicated because plaintiff did not represent that she actually pursued a

2    joint legal strategy with Ms. Reed or Ms. Ballou.  Thus, plaintiff's supplemental response was

3    not entirely true because the redacted portions of these emails and text messages were indeed

4    responsive to defendant City's RFP No. 12 and were not privileged as plaintiff continued to

5    maintain.  *See* Dkts. 245, at 3, 6; 273, at 6, 8 (arguing that plaintiff's continued withholding of

6    these communications was proper based on the asserted work-product and common interest

7    doctrines).

8              **F.    Defendant City's January 2020 Motion to Compel and the Court's
                       Order Regarding Forensic Examination of Plaintiff's Electronic
9                      Devices**

10             Following unsuccessful attempts to clarify which documents plaintiff had withheld and

11   under what asserted privilege, defendant City requested access to plaintiff's laptop computer or

12   cell phone so that they could be inspected for relevant documents.  Plaintiff refused.  Dkt. 194-3,

13   at 3.  Thereafter, on January 30, 2020, defendant City filed a motion to compel a forensic

14   examination of plaintiff's electronic devices.  Dkt. 193.  In its motion to compel, defendant City

15   argued that forensic examination of plaintiff's electronic devices was necessary due to plaintiff's

16   failure to timely and fully respond to discovery requests propounded by defendants Holmes and

17   the City and her inconsistent deposition testimony in light of documents produced in November

18   2019.  *See id.*  Both in her opposition brief and during oral argument on this motion to compel

19   (Dkt. 193), plaintiff maintained that she had searched her files and produced all non-privileged

20   responsive documents within her possession, custody, or control.  *See* Dkt. 198, at 3.  As it

21   would come to pass, this was not true, either.  *See, e.g.*, Dkts. 247, at 2; 250, at 1.

22             During oral argument on defendant City's motion to compel (Dkt. 193), the Court noted

23   that in light of plaintiff's conduct in discovery thus far, plaintiff's discovery responses could not

24

be accepted at face value and that a forensic examination of plaintiff's devices was warranted to verify that plaintiff had in fact disclosed all responsive communications requested by defendant City's RFP No. 12 and defendant Holmes' RFP No. 13.

On April 6, 2020, after additional briefing, the Court granted defendant City's motion to compel forensic examination of plaintiff's electronic devices pursuant to an agreed-upon forensic protocol. Dkt. 221 (citing Dkts. 202, 217 for the forensic protocol). Notably, plaintiff was given the opportunity to review and object to defendant City's proposed forensic protocol. *See* Dkt. 212, at 2. She filed no objections.

In pertinent part, and as agreed to by the parties, the forensic protocol provides the following:

> [Forensic examiner] would utilize search terms to conduct the search of the stored data. . . . The search terms would consist of the name of the Plaintiff and the names of individuals listed as current or former employees of the City of Vancouver referred to in the City's Discovery Request to [plaintiff], and the names of the current and former employees of the City of Vancouver referenced in Defendant Eric Holmes' [RFP] No. 13. . . .

> Once the search of a device has been conducted, [forensic examiner] would provide copies of the documents retrieved in the search to Plaintiff's counsel so that they would review them with their client. Plaintiff's counsel would in turn provide [forensic examiner] with written or electronic confirmation of the documents that [forensic examiner] could in turn provide to the City of Vancouver. If the Plaintiff and her counsel identify one or more documents located through the search process which they object to having [the forensic examiner] provide to the Defendants and their counsel, the Plaintiff and her counsel would provide copies of those documents to the Court for *in camera* review.

> *The Plaintiff's counsel would be required to concurrently provide the Defendants and their counsel an electronic or written communication setting forth the date of the withheld communication, the parties to the communication, and a sufficient description of the communication so that the City could then bring a motion to compel or otherwise provide the Court with a submittal stating the reasons why the withheld document(s) should be produced to the City.*

Dkt. 217, at 3–4 (emphasis added).

A forensic examiner conducted the initial inspection of plaintiff's devices and presented search findings for plaintiff's review and her authorization to release documents pursuant to the forensic protocol and as ordered by the Court. *See* Dkts. 221, 217. However, plaintiff refused to authorize the forensic examiner to release recovered documents, as she was required to do under the agreed-upon protocol, and plaintiff failed to produce any written privilege log to defendants—despite this Court's Order. *See* Dkt. 221. Plaintiff's refusal to comply with the forensic examination protocol was a violation of this Court's forensic examination order, a violation of her obligation to provide a written privilege log, and a violation of her duty to timely supplement responses to valid discovery requests. *See* Fed. R. Civ. P. 26(b)(5)(A), (e)(1); Dkt. 221.

### G.      Defendant City's May 2020 Motion to Compel Plaintiff's Compliance with the Court's Forensic Examination Order

On May 21, 2020, defendant City brought a second motion to compel plaintiff's compliance with the Court's forensic examination order (Dkt. 221). *See* Dkt. 224. After oral argument (Dkt. 237), the Court agreed with defendant City that plaintiff had failed to comply with the forensic examination order and granted defendant City's second motion to compel. Dkt. 238. The Court again ordered that plaintiff produce complete copies of all electronic communications retrieved in the forensic examination and that plaintiff further provide a privilege log—as previously ordered by the Court—for any withheld documents. *See id.* at 2–3.

On July 1, 2020—almost three months after the Court had ordered the forensic examination—plaintiff finally produced thousands of documents retrieved in the forensic examination and provided a written privilege log. *See* Dkts. 244, at 1–2; 247, at 2. However, plaintiff continued to assert privilege over hundreds of documents. Following plaintiff's July 1, 2020 production, defendant City challenged the sufficiency of plaintiff's written privilege log

1   and challenged her asserted privileges over these documents.  *See* Dkt. 243.  Although plaintiff

2   revised her privilege log, the parties' dispute over withheld documents had still not been

3   resolved.  *See id.*

4          **H.**     **Defendant City's August 2020 Motion to Compel Plaintiff's Disclosure of Withheld Documents Recovered in Forensic Examination**

5

6         On August 6, 2020, defendant City filed its third motion to compel, requesting that

7   plaintiff be compelled to produce the withheld documents listed on her second-revised privilege

    log for *in camera* review.  *See* Dkt. 243 at 4–9, 11.

8

9         On the same day that her responsive brief was due—and 11 days after defendant City

10  filed its third motion to compel production—plaintiff produced most of the documents that she

11  had previously withheld—apparently waiving her asserted privileges.  She continued to assert

12  privileges as to only 62 documents.  *See* Dkt. 245.  Plaintiff provided no explanation for

13  releasing the other previously withheld documents, other than claiming that she wanted to

14  "minimize the issues" before the Court.  *Id.* at 1.  Again—as the Court and defendants would

15  learn—the newly produced documents revealed responsive information that had been withheld

16  for nearly two years that *was not* protected under plaintiff's asserted privileges.  *See, e.g.*, Dkt.

17  265-11 (September 2017 email to Ms. Reed, "I am sending in my whistleblower and tort claim

18  early this week.  We'll see how it goes."); Dkt. 265-14 (August 2017 email to Ms. Reed, "I have

19  drafted this document to file with the City, but I am wondering if you are willing [to give] me

20  your comments before I send.") (attaching draft whistleblower memo regarding discrimination);

21  Dkt. 287-9 (June 2017 email to Ms. Reed, "[W]anted to let you know the EEOC changed its

22  rules . . . to allow complainants to receive a copy of the employer response upon written

23  request.").

24

1      Subsequently, the Court conducted an *in camera* review of the remaining 62 disputed

2  documents and ordered plaintiff to produce many of the documents she continued to withhold.

3  *See* Dkt. 255.  In pertinent part, the Court found that many of plaintiff's documents were not

4  protected under the asserted work-product and common interest doctrines.  *See id.* at 7–8.

5      Having now reviewed many of the documents that plaintiff attempted to conceal, it is

6  clear that plaintiff's asserted privileges were not made in good faith.  A more plausible

7  explanation for the concealment is that the later-disclosed documents contradicted her 2018 and

8  2019 deposition testimony that plaintiff had not encouraged City employees to bring claims

9  against the City.  For instance, on July 11, 2018, plaintiff texted Ms. Ballou, "I am not sure you

10  should agree to let the City investigate.  Just go directly to the EEOC."  Dkt. 285-3, at 1.  On July

11  26, 2018—14 days later—plaintiff again texted Ms. Ballou, "Don't hold off on any action

12  because you want to wait until the [City's] investigation is done."  *Id.* at 2.  Nothing in these

13  communications is considered protected work product, nor are the communications protected

14  under the common interest doctrine.  *See Sanmina Corp.*, 968 F.3d at 1121; *In re Pac. Pictures*

15  *Corp.*, 679 F.3d at 1129.  What they do reveal is that plaintiff was consulting and advising

16  current and former City employees regarding their claims against the City and that plaintiff

17  discussed her own claims against defendant City.  These documents were validly requested and

18  responsive to defendants' discovery requests and this Court's discovery orders, and plaintiff

19  should have disclosed them earlier.  *See* Fed. R. Civ. P. 26(e).

20      In summary, plaintiff has a duty to testify truthfully (Fed. R. Civ. P. 30(c)), to timely

21  respond and supplement discovery requests (Fed. R. Civ. P. 26(e)(1)(A)), to prepare privilege

22  logs for documents withheld from discovery (Fed. R. Civ. P. 34(b)(2)(C)), and to comply with

23  Court orders regarding discovery (Fed. R. Civ. P. 26(e)(1)(B)).  However, plaintiff did not testify

24

1    truthfully, she withheld documents despite her duties to timely respond and supplement

2    discovery responses, she failed to provide a written privilege log for withheld documents even

3    after being ordered by the Court, and she otherwise disobeyed this Court's discovery orders and

4    protocols that she had agreed to follow.  Plaintiff's repeated and numerous violations of the

5    Federal Rules of Civil Procedure are the type of conduct prohibited and sanctionable under Fed.

6    R. Civ. P. 37.

7        **II.    Monetary Sanctions**

8            Based on plaintiff's discovery conduct, defendant City seeks monetary sanctions totaling

9    $88,188.66.  Dkt. 256, at 12.  Specifically, defendant City seeks attorney's fees incurred

10   regarding a prior motion to dismiss (Dkt. 74), three prior motions to compel (Dkts. 193, 224,

11   243), and the motion for sanctions (Dkt. 256), as well as expenses incurred in connection with

12   the Court-ordered forensic examination.  *See* Dkts. 256, at 12; 257, at 3–7; 257-3.  Having

13   considered defendant City's partial success in bringing the prior motions to compel, the Court

14   finds that an award of attorney's fees and expenses as a sanction for plaintiff's discovery conduct

15   is appropriate.  However, as discussed below, the Court finds that defendant City is not entitled

16   to all of the attorney's fees that it seeks.

17           If a motion to compel is granted—or if the disclosure or requested discovery is only
             provided after the motion to compel was filed—the court must, after giving an
18           opportunity to be heard, require the party . . . whose conduct necessitated the motion
             . . . to pay the movant's reasonable expenses incurred in making the motion,
19           including attorney's fees. . . .

20           If a motion to compel is granted in part and denied in part, the court may . . . ,
             after giving an opportunity to be heard, apportion reasonable expenses for the
21           motion.  . . .

22   Fed. R. Civ. P. 37 (a)(5)(A), (a)(5)(C).

23

24

REPORT AND RECOMMENDATION - 20

1    Additionally, the Court has the discretion to order monetary sanctions, including

2    reasonable attorney's fees and expenses, where a party fails to obey a court order to provide or

3    permit discovery or where a party fails to supplement an earlier discovery response pursuant to

4    Fed. R. Civ. P. 26(e).  *See* Fed. R. Civ. P. 37(b)(2)(C), (c)(1)(A).

5    As discussed above, plaintiff's conduct necessitated several motions to compel.  *See* Dkt.

6    193 (granted in part and denied in part), Dkt. 224 (granted), Dkt. 243 (granted in part and denied

7    in part).  Much of the information that was produced was not produced until after the motion—or

8    several motions—had been filed.  And plaintiff failed to obey several orders of the Court to

9    permit discovery.  Thus, the Court may award monetary sanctions for plaintiff's discovery

10   violations.  *See* Fed. R. Civ. P. 37(b)(2)(C), (c)(1)(A).

11   A monetary sanction, such as the imposition of attorney's fees, when imposed pursuant to

12   civil procedures, "must be compensatory rather than punitive in nature."  *Goodyear Tire &*

13   *Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (citing *Mine Workers v. Bagwell*, 512 U.S.

14   821, 826–30 (1994)).  In determining whether to award attorney's fees, the Court must find a

15   "causal link" between plaintiff's misbehavior at issue and legal fees paid by defendant.  *Id.*

16   Accordingly, defendant City "may recover 'only the portion of [its] legal fees that [it] would not

17   have paid but for' the misconduct."  *Id.* at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)).

18   As an initial matter, defendant City seeks an award of attorney's fees in the sum of

19   $54,810.00 incurred in bringing three prior motions to compel and attorney's fees for the present

20   motion for sanctions.  Dkts. 193; 224; 243; 257, at 3–7.  The Court notes that each of defendant

21   City's motions to compel was precipitated by plaintiff's discovery conduct in this matter.  The

22   Court deferred ruling on defendant City's multiple requests for attorney's fees and/or sanctions

23   pending resolution of the discovery disputes at issue.  *See* Dkts. 221, 238, 255.  Now that the

24

1   Court has had an opportunity to review the full scope of plaintiff's discovery conduct, the Court

2   is prepared to recommend the appropriate monetary sanctions.

3   First, with regard to fees, "[t]he starting point for determining a reasonable fee is the

4   'lodestar' figure, which is the number of hours reasonably expended multiplied by a reasonable

5   hourly rate." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citations omitted).  The

6   amount of fees must be determined on the facts of each case.  *See Camacho v. Bridgeport Fin.,*

7   *Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).

8   In determining the appropriate lodestar amount, the district court may exclude from the fee

9   request any hours that are "excessive, redundant, or otherwise unnecessary." *Welch v. Metro.*

10  *Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (citation omitted).

11  Defendant City's counsel is requesting a primary hourly rate of $350.00.  Dkt. 257, at 3.

12  Although plaintiff opposes defendant City's counsel's hourly rate, plaintiff does little more than

13  conclude that the rate is unreasonable based on the number of hours billed.  *See* Dkt. 273, at 15.

14  This is insufficient.  Having reviewed defendant City's declarations in support of its motion for

15  sanctions (Dkt. 257, 281), the Court finds that the hourly rate of defendant City's counsel is

16  reasonable and prevailing in the community for similar work performed by attorneys of

17  comparable skill, experience, and reputation.

18  Plaintiff further argues that the attorney's fees sought should be reduced because

19  defendant City achieved only "limited success" in its motions to compel.  Dkt. 273, at 14.  While

20  the Court finds that the total hours spent in bringing the motions to compel and the motion for

21  sanctions is reasonable in this case, the Court notes that plaintiff's first and third motions to

22  compel (Dkts. 193, 243) were granted in part and denied in part.  For instance, regarding the first

23  motion to compel (Dkt. 193), the Court granted defendant City's request for forensic

24

1    examination of plaintiff's devices (Dkt. 221), but the Court denied defendant City's request for

2    plaintiff to respond to all other discovery requests by describing withheld documents because the

3    request lacked specificity.  *See* Dkt. 212.  Regarding the third motion to compel (Dkt. 243), the

4    Court granted in part and denied in part defendant City's request that plaintiff disclose all

5    withheld documents listed on the second-revised privilege log because some of those documents

6    were protected under the work-product doctrine.  *See* Dkt. 255.  Thus, the Court finds that an

7    award of attorney's fees should be reduced by 30% based on defendant City's rate of partial

8    success in bringing its first and third motions to compel, as well as this motion for sanctions.  *See*

9    *Camacho*, 523 F.3d at 982 ("[A] district court may reduce attorneys' fees by a percentage, so

10   long at the court sets forth clear and concise reasons for adopting this approach."  (citing *Ferland*

11   *v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001)); *see also* Fed. R. Civ. P.

12   37(a)(5)(C) (noting apportionment of reasonable expenses when a motion to compel is granted in

13   part and denied in part).

14        Additionally, the Court further recommends reducing defendant City's requested

15   attorney's fees by 20% for "block-billed" time entries reflecting multiple activities.  *See* Dkt.

16   257, at 4–6.  Because it is difficult to determine how much time was spent on particular activities

17   (*e.g.* Dkt. 257, at 4 ("Participate in lengthy LR 37 conference []; continue reviewing documents;

18   conduct legal research re discovery issues")), the Court has reviewed each block-billed time

19   entry (18 entries from January 7, 2020, to August 19, 2020, representing 51.1 hours) and finds

20   that the requested fees for those entries should be reduced by 20% because it is difficult to

21   differentiate between what services were related specifically to matters upon which defendant

22   prevailed.  *See Welch*, 480 F.3d at 948.  Therefore, the Court recommends that defendant City

23

24

1  should be awarded $34,790.00 in attorney's fees for the motions to compel and motion for

2  sanctions, rather than the requested $54,810.00.

3       Defendant City also requests an award of expenses in the sum of $16,053.66 incurred in

4  connection with the forensic examination of plaintiff's electronic devices. Dkts. 257, at 3; 257-3.

5  Here, it is clear that the expenses associated with the forensic examination are directly linked to

6  plaintiff's discovery conduct at issue—providing inaccurate testimony regarding her

7  communications with former or current employees of defendant City, failing to fully and timely

8  respond to discovery requests regarding such communications, and failing to provide a privilege

9  log acknowledging the existence of responsive documents—which led this Court to require a

10 forensic examination of plaintiff's electronic devices. Then plaintiff failed to obey the Court's

11 Order regarding forensic examination of her electronic devices by refusing to release documents

12 recovered in the forensic examination and failing to provide a privilege log pursuant to the

13 agreed upon protocol. *See* Fed. R. Civ. P. 37(b)(2)(C), (c)(1)(A). Accordingly, defendant City

14 should be awarded $16,053.66, the amount requested for expenses incurred related to the

15 forensic examination.

16      Finally, defendant City seeks attorney's fees in the sum of $17,325.00, incurred in

17 bringing its first motion to dismiss, filed in April 2019. *See* Dkts. 74. In that motion to dismiss,

18 defendant City argued that plaintiff's lawsuit against all defendants should be dismissed with

19 prejudice due to plaintiff's violations of the Rules of Professional Conduct. *See* Dkt. 74, at 1.

20 Specifically, defendant City argued that plaintiff breached her duties of loyalty and preservation

21 of confidential information owed to her client, defendant City, and thus, plaintiff's conduct

22 "tainted" these proceedings and "destroyed" defendant City's right to a fair trial. *Id.* at 1, 4, 24.

23 However, in denying the motion to dismiss, the District Court found that defendant City failed to

24

1  show facts supporting plaintiff's purported ethical breaches, nor had defendant City shown that

2  its right to a fair trial had been impaired by any such breach.  *See* Dkt. 142, at 3–4.

3        The United States Supreme Court has stated that "when 'the cost[] would have been

4  incurred in the absence of' the discovery violation, then the court (possessing only the power to

5  compensate for harm the misconduct has caused)" "lacks a basis for shifting the expense."

6  *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1187 (quoting *Fox*, 563 U.S. at 836).  Here,

7  defendant City argues that the fees incurred in connection with the prior motion to dismiss are

8  directly related to plaintiff's wrongful withholding of discoverable information and documents.

9  Dkt. 289, at 5–6.  However, defendant City has not shown that this matter would have in fact

10  been dismissed "as soon as" plaintiff "was supposed to disclose" responses to defendants'

11  discovery requests.  Nor has defendant City shown that plaintiff would have been unable to

12  assert any colorable defense to the motion to dismiss even if she had made timely disclosures.

13  *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1189 (noting that although earlier disclosure of

14  discoverable information may have been favorable to a party, the disclosure would not have

15  deprived the opposing party of colorable defenses).  The Court notes that disclosure of the

16  withheld documents was certainly relevant and more favorable to defendant City's claims that

17  plaintiff breached her ethical and fiduciary duties.  However, the City failed to show that its right

18  to a fair trial in this matter had been prejudiced by this alleged breach, nor has the City shown

19  that the outcome of the prior motion to dismiss would necessarily have differed.  Thus, although

20  plaintiff's timely disclosures may have been more favorable to defendant City's prior motion to

21  dismiss, defendant City has failed to prove that but for plaintiff's discovery abuses, the City

22  would be denied a fair trial.  Accordingly, the Court should decline to award defendant City's

23  attorney's fees incurred in bringing the prior motion to dismiss.

24

REPORT AND RECOMMENDATION - 25

1    Plaintiff also requests that the Court make monetary sanctions payable upon resolution of

2   this entire case.  *See* Dkt. 273, at 17.  In support of her request, plaintiff states that she is not

3   currently employed and has little income to satisfy any monetary sanctions at this time.  *See id.*

4   As defendant City has not expressed any opposition to plaintiff's request, the Court finds that a

5   delay in payment of sanctions is reasonable.  Accordingly, the undersigned recommends that

6   payment of monetary sanctions should be immediately due, accruing interest at the statutory rate,

7   but need not be paid until a final judgment is rendered in this matter.  The Court further

8   recommends that the District Court provides that any final award in favor of plaintiff paid by any

9   party found to be responsible shall be paid into the registry of the Court for purposes of

10   satisfying any unpaid portions of the award of attorney's fees and expenses.

11    Additionally, the Court reminds plaintiff that whether or not plaintiff receives any award

12   in her favor, she still must comply with the Court's orders, including the timely payment of

13   attorney's fees and expenses.  Her failure to do so may result in further sanctions.  *See Walt*

14   *Disney Co. v. DeFabiis*, 168 F.R.D. 281, 285 (C.D. Cal. 1996) (citation omitted).

15    Accordingly, the Court recommends that plaintiff should be ordered to pay defendant

16   City $34,790.00 in attorney's fees and $16,053.66 in expenses incurred in bringing the prior

17   motions to compel and this motion for sanctions.  The Court further recommends that the award

18   of attorney's fees and expenses should be immediately due, but payment may be delayed until

19   final judgment is rendered.  And any final award in favor of plaintiff paid by any party found to

20   be responsible shall be paid into the registry of the Court for purposes of satisfying any unpaid

21   portions of the award of monetary sanctions.

22

23

24

1    ### III.    Non-Monetary Sanctions

2    ### A.    Dismissal with Prejudice

3    Defendant City requests that the Court dismiss plaintiff's lawsuit with prejudice as a

4    sanction based on plaintiff's discovery conduct in this matter.  *See* Dkt. 256, at 12.  Defendant

5    City argues that plaintiff's conduct prejudiced defendant in bringing its prior motion to dismiss

6    (Dkt. 74) and that plaintiff "undermine[d] the justice system in order to benefit herself."  *Id.* at

7    10; *see also* Dkt. 280, at 1–3.

8    The Court has the discretion to dismiss an action, in whole or in part, for a party's failure

9    to comply with a court order to provide or permit discovery or failure to supplement a discovery

10   request pursuant to Fed. R. Civ. P. 26(e).  Fed. R. Civ. P. 37(b)(2)(A)(v), (c)(1)(C).  However,

11   the Court's discretion to dismiss an action as a sanction is limited.  *Computer Task Grp., Inc. v.*

12   *Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004) (citations omitted); *see also Fjelstad v. Am. Honda*

13   *Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985).

14   In determining whether a sanction of dismissal for noncompliance with discovery is

15   appropriate, the district court must weight five factors:  "'(1) the public's interest in expeditious

16   resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the

17   [opposing party]; (4) the public policy favoring disposition of cases on their merits; and (5) the

18   availability of less drastic sanctions.'"  *Computer Task Group, Inc.*, 264 F.3d at 1115 (quoting

19   *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987)).  "[W]here a court order is

20   violated, factors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, so 3 and

21   5, prejudice and availability of less drastic sanctions, are decisive."  *Valley Engineers Inc. v.*

22   *Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) (quoting *Adriana Int'l Corp. v. Thoeren*,

23   913 F.2d 1406, 1412 (9th Cir. 1990)).

24

1    Here, defendant City has shown that plaintiff violated her discovery obligations pursuant

2  to Fed. R. Civ. P. 26(e) and 37(c).  Defendant City has further shown that plaintiff violated the

3  Court's April 6, 2020 Order regarding the forensic examination of plaintiff's electronic devices

4  (Dkt. 221), which is also sanctionable.  Fed. R. Civ. P. 37(b)(2).

5    However, while these violations are serious and must be addressed by appropriate

6  sanctions, defendant City has failed to show that plaintiff's delay in disclosing discovery

7  information and documents so prejudiced defendant City as to prevent defendant City from fully

8  preparing for trial or preparing its legal strategy.  *See Payne v. Exxon Corp.*, 121 F.3d 503, 508

9  (9th Cir. 1997) (noting that "[b]elated compliance with discovery orders does not preclude the

10  imposition of sanctions[;]" however, the issue is whether the delay prejudiced the opposing

11  party's ability to prepare its case for trial or incorporate withheld discovery into its legal strategy

12  (internal citations omitted)). Such a sanction would be appropriate, if, for instance, critical

13  evidence is destroyed, which does not appear to be the case here.  *See Leon v. IDX Sys. Corp.*,

14  464 F.3d 951, 960–61 (9th Cir. 2006) (affirming a dismissal sanction based on a party's

15  spoliation of evidence).  Defendant City has argued, and no doubt will continue to argue, that

16  plaintiff violated her ethical obligations to her client—the City of Vancouver.  And plaintiff's

17  failure to comply with her discovery obligations as discussed herein will only further defendant

18  City's arguments in its renewed motion to dismiss—not prejudice them.  Therefore, depriving

19  plaintiff any opportunity to have her claims decided on the merits is not appropriate, since

20  defendant City is likely to be fully prepared to address the merits of this case now that plaintiff

21  has finally disclosed the pertinent information.

22    Additionally, the Court must also consider whether less drastic sanctions are available.

23  *See Computer Task Group, Inc.*, 364 F.3d at 1115.  This requires the Court's analysis of

24

1    "whether the court has considered lesser sanctions, whether it tried them, and whether it warned

2    the recalcitrant party about the possibility of case-dispositive sanctions." *Conn. Gen. Life Ins.*

3    *Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).  In this case, plaintiff

4    has been on notice that she may be subject to sanctions.  *See* Dkts. 212, 221, 238, 255.  However,

5    the Court has not previously warned plaintiff of the possibility of involuntary dismissal—a fact

6    that weighs against dismissal at present.  *See Conn. Gen. Life Ins. Co.*, 482 F.3d at 1096.

7         Therefore, the Court recommends denying defendant City's request to dismiss plaintiff's

8    lawsuit with prejudice at this time.  However, the Court warns plaintiff that any newly

9    discovered misconduct or her continued obstruction of this litigation may be grounds for future

10   dismissal with prejudice.

11                         **B.        Other Sanctions**

12        Although the Court recommends against dismissing plaintiff's action with prejudice as a

13   sanction, the Court finds that plaintiff's discovery conduct warrants other non-monetary

14   sanctions.  Pursuant to Fed. R. Civ. P. 37, in addition to monetary sanctions, the Court may

15   impose appropriate non-monetary sanctions for a party's failure to obey a court order or failure

16   to supplement an earlier response to a discovery request.  *See* Fed. R. Civ. P. 37(b)(2)(A), (c)(1).

17   These sanctions may include designating facts as proven and informing the jury of a party's

18   failure to comply with its discovery duties, among others.  *See* Fed. R. Civ. P. 37(b)(2)(A)(i)–

19   (vii), (c)(1)(B)–(C).  "Rule 37 sanctions must be applied diligently both to penalize those whose

20   conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to

21   such conduct in the absence of such a deterrent." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752,

22   763–64 (1980) (internal quotation omitted).  Additionally, sanctions imposed under Rule

23

24

REPORT AND RECOMMENDATION - 29

1   37(b)(2) "must be specifically related to the particular claim which was at issue in the order to

2   provide discovery." *Fjelstad*, 762 F.2d at 1342 (citation omitted).

3          Although not specifically requested, the Court has carefully considered these other types

4   of sanctions in lieu of dismissal of this action.  Here, plaintiff has maintained that she never

5   encouraged any current or former City employee to file suit or file a complaint of discrimination

6   against the City.  *See* Dkts. 244-3, at 2; 257-2, at 6; 273, at 10–11.  However, it is clear that not

7   only did plaintiff encourage other individuals to file claims against defendant City, but she also

8   continuously failed to disclose related information and documents in response to valid discovery

9   requests until the information was disclosed by non-parties Ms. Reed and Ms. Ballou (*see* Dkts.

10  194-7, 194-8), and even following orders by this Court.  *See* Dkts. 212, 221, 238, 255.  Plaintiff's

11  continued delay in disclosure based on meritless assertions of privilege and her willful

12  noncompliance with Court orders has seriously impaired defendants' ability to efficiently litigate

13  this matter.  Thus, sanctions tied to plaintiff's false deposition testimony and the compelled

14  disclosure of documents inconsistent with that testimony are appropriate.  *See Fjelstad*, 762 F.2d

15  at 1342; *See also Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001) ("[A] a sanction in

16  the form of an adverse factual finding rests on neither consent nor waiver.  Rather, it rests on the

17  reasonable assumption that the party resisting discovery is doing so because the information

18  sought is unfavorable to its interest.  In such a case, the sanction merely serves as a mechanism

19  for establishing facts that are being improperly hidden by the party resisting discovery.").

20         Therefore, the Court recommends the following non-monetary sanctions pursuant to Fed.

21  R. Civ. P. 37:

22         (1)    For purposes of this litigation, it shall be deemed admitted that when plaintiff
                  testified on September 11, 2018, and June 3, 2019, that she had not encouraged
23                any former or current City of Vancouver employee to file suit or file a complaint
                  of discrimination against the City, she failed to disclose:

24

REPORT AND RECOMMENDATION - 30

(a) that she had in fact communicated with former City employee Karen Reed regarding Ms. Reed's EEOC complaint; that she had provided Ms. Reed with City documents and communications in support of Ms. Reed's EEOC complaint, and that she had agreed to act as a fact witness in support of Ms. Reed's EEOC complaint; and

(b) that she had in fact communicated with current City employee Julie Ballou and encouraged Ms. Ballou to file a complaint with the EEOC and encouraged Ms. Ballou not to "hold off on any action" against defendant City.

The imposition of this sanction—deeming certain facts admitted as true—is appropriate in light of plaintiff's conduct and does not act as a "default dismissal" of her claims. *See Network Appliance, Inc. v. Bluearc Corp.*, No. C 03-5665 MHP, 2005 WL 1513099, at *3 (N.D. Cal. June 27, 2005) (noting the severity of a sanction that may be tantamount to dismissal of a plaintiff's claims and that such sanctions based on discovery misconduct are generally improper absent undue prejudice to the opposing party) (citations omitted).

## CONCLUSION

For the reasons set forth herein, the Court recommends that defendant City's motion for sanctions (Dkt. 256) be **GRANTED** in part and **DENIED** in part.  Plaintiff should be ordered to pay defendant City $34,790.00 in attorney's fees and $16,053.66 in expenses, which should be immediately payable, but payment may be delayed until a final judgment is rendered in this matter.  The Court further recommends that should there be an award in favor of plaintiff, that award should be paid into the registry of the Court for purposes of satisfying any unpaid portions of the award of sanctions.

Additionally, defendant City's request for dismissal of plaintiff's suit with prejudice as a sanction should be denied.  However, in lieu of dismissal, the Court recommends imposing non-monetary sanctions, deeming certain facts admitted as true, as stated in this Report. *See supra*, Section III(B).

1     Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

2   fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

3   6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

4   review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

5   of those objections for purposes of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

6   *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).  Accommodating the time limit

7   imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **January 22,**

8   **2021,** as noted in the caption.

9     The Clerk is directed to renote defendant City's renewed motion to dismiss (Dkt. 264) for

10  **February 22, 2021**.  The Clerk is further directed to renote defendant City's motion for

11  summary judgment (Dkt. 260), plaintiff's motion for partial summary judgment (Dkt. 262), and

12  defendants Young and Potter's motions for summary judgment (Dkts. 266, 268) for **March 12,**

13  **2021**.

14    Dated this 6th day of January, 2021.

15

16

17

18    J. Richard Creatura
      United States Magistrate Judge

19

20

21

22

23

24