1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
9                      AT TACOMA

10   DEBRA QUINN,
                                              CASE NO. 3:17-cv-05969-BHS
11              Plaintiff,
                                              REPORT AND
12        v.                                  RECOMMENDATION

13   CITY OF VANCOUVER, *et al.*,             NOTED FOR:  June 25, 2021

14              Defendants.

15

16        The District Court has referred the parties' pending motions for summary judgment

17   (Dkts. 260, 262, 266, 268) to the undersigned Magistrate Judge.  *See* Dkt.

18        Plaintiff, an attorney, initiated this action in November 2017 against her then employer,

19   defendant City of Vancouver ("defendant City"), and her supervisors, defendants Eric Holmes,

20   Bronson Potter, and Jonathan Young.  In June 2019, after filing suit, defendant City terminated

21   plaintiff's employment.  While still employed, plaintiff claims that she was the victim of gender

22   discrimination, harassment, and retaliation.  Plaintiff also claims that defendant City wrongfully

23   terminated her employment, among other claims.

24

Plaintiff and defendants now seek summary judgment pursuant to Fed. R. Civ. P. 56 as to plaintiff's claims raised in her second amended complaint (Dkt. 186). *See* Dkts. 260, 262, 266, 268. The parties have filed their respective response briefs, and the matter is ripe for review.

Specifically, defendant City seeks summary judgment as to plaintiff's claims that defendant City deprived her of a liberty interest in violation of the Fourteenth Amendment (Count 7) and that plaintiff was wrongfully discharged in violation of public policy (Count 8). *See* Dkt. 260. The Court agrees that plaintiff's claim under the Fourteenth Amendment (Count 7) should be dismissed with prejudice. Plaintiff has failed to come forward with required evidence that she requested a name clearing hearing in connection with the termination of her employment. Therefore, having failed to proffer evidence that she requested any such hearing, plaintiff has failed to show that defendant City violated her due process rights under the Fourteenth Amendment. However, the Court finds that defendant City has failed to show that it is entitled to summary judgment as to plaintiff's claim of wrongful discharge in violation of public policy (Count 8). Although defendant City argues that federal and state statutory remedies are exclusive, and thus, bar plaintiff's claim of wrongful discharge, the Court finds that plaintiff is not precluded from pursuing possible recovery under her state common law claim of wrongful discharge. Accordingly, the Court recommends that defendant City's motion for summary judgment be granted in part and denied in part.

Plaintiff also seeks summary judgment as to her claims of retaliation under state and federal law (Counts 3 and 4) against defendant City. *See* Dkt. 262. Plaintiff argues that she is entitled to summary judgment because defendant City admitted to terminating plaintiff's employment in retaliation for engaging in protected activities. However, the Court finds that defendant City has come forward with sufficient evidence that creates a genuine issue of material

1  fact as to whether plaintiff's employment was terminated for legitimate, non-retaliatory reasons.

2  Therefore, the Court recommends denying plaintiff's motion for summary judgment.

3      Defendant Young also seeks summary judgment as to plaintiff's claim that he unlawfully

4  retaliated against plaintiff in violation of state law (Count 4) when he placed plaintiff on paid

5  administrative leave.  *See* Dkt. 266.  Defendant Potter also joins defendant Young's motion and

6  seeks dismissal of plaintiff's claim of retaliation against him.  *See* Dkt. 268, at 2.  Defendants

7  Potter and Young argue that plaintiff has failed to show that their reasons for placing plaintiff on

8  leave—in order to investigate plaintiff's allegedly unprofessional behavior—were pretext for

9  retaliation.  However, the Court finds that plaintiff has come forward with sufficient evidence,

10  when viewed in the light most favorable to her, that creates a genuine issue of material fact as to

11  whether defendants Young and Potter's reasons for placing plaintiff on leave were false and/or

12  inconsistent, and therefore, pretextual or substantially motivated by retaliation.  Therefore, the

13  Court recommends denying defendants Young and Potter's motions for summary judgment as to

14  plaintiff's claim of retaliation.

15      Defendants Young and Potter also request that the Court dismiss plaintiff's request for

16  punitive damages against them because such relief is not permitted under state law.  *See* Dkt.

17  266, at 23.  The Court agrees.  The Supreme Court of Washington State has unequivocally stated

18  that punitive damages are not available under Washington's antidiscrimination law.  Because

19  plaintiff raises only state law claims against defendants Young and Potter, the Court recommends

20  dismissing plaintiff's requested punitive damages against them.

21      Defendant Potter also seeks summary judgment as to plaintiff's claim that he unlawfully

22  discriminated against plaintiff by failing to promote her based on her gender (Count 2).  *See* Dkt.

23  268.  Defendant Potter argues that plaintiff is unable to show that his legitimate reason for

24

selecting a male candidate (defendant Young) over plaintiff for a promotion was pretext for gender discrimination or otherwise substantially motivated by plaintiff's gender. However, the Court finds that plaintiff has come forward with evidence, when viewed in the light most favorable to her, that creates a material issue of fact as to whether defendant Potter was improperly motivated by plaintiff's gender in failing to promote her. Therefore, the Court recommends denying defendant Potter's motion for summary judgment.

Finally, defendant Holmes joins in defendant Potter's motion for summary judgment (Dkt. 268) and requests that the Court dismiss plaintiff's claim of gender discrimination against him (Count 2). *See* Dkt. 270. Defendant Holmes argues that if plaintiff's claim against defendant Potter fails, her claim against defendant Holmes must also fail. As the Court recommends that defendant Potter's motion for summary judgment should be denied, the Court recommends that defendant Holmes' request for dismissal of plaintiff's claim of gender discrimination should also be denied.

Accordingly, the Court recommends that the parties' motions for summary judgment (Dkts. 260, 262, 266, 268, 270) be granted in part and denied in part, as discussed below.

## FACTUAL AND PROCECURAL BACKGROUND

Defendant City hired plaintiff as an Assistant City Attorney in April 1993. Dkt. 186, at 4. During the relevant period from December 2013 to June 2019, defendants Holmes, Potter, and Young were plaintiff's supervisors during her employment with defendant City. *See id.* at 3.

Plaintiff alleges that in December 2013, she learned that defendant Potter made discriminatory and demeaning comments about another female employee, referring to the employee as "the one with the big tits." Dkt. 186, at 4; *see also* Dkt. 103-6, at 12 (defendant Potter's testimony confirming his statement). Plaintiff alleges that she reported her concerns

1  regarding these comments to defendants Young and Potter, who thereafter allegedly "ostracized"

2  plaintiff.  *Id.*

3      In October 2014, plaintiff applied for a promotion as the Chief Assistant City Attorney.

4  *See* Dkt. 186, at 4.  Plaintiff was the only female candidate interviewed for the position.  *See id.*

5  Plaintiff further alleges that she participated in two separate interview panels for the position and

6  that one panel preferred plaintiff, while the second all male panel did not.  *See id.*  Plaintiff

7  further alleges that defendant Potter made sexist and derogatory comments about plaintiff to the

8  second, all male panel and discouraged that panel from selecting plaintiff for the promotion.  *See*

9  *id.*  Defendant Potter disputes that he made any sexist or derogatory comments about plaintiff to

10  the second interview panel.  *See* Dkt. 268, at 5–6.

11      Following the interview process, plaintiff alleges that defendant Potter "disregarded"

12  defendant City's appointment policy and procedures and selected defendant Young for the

13  promotion, even though defendant Young had not applied for the position.  *See id.*  Defendant

14  Potter argues that his decision to promote defendant Young over plaintiff was consistent with the

15  City's recruitment guidelines.  *See* Dkt. 268, at 9–10.

16      In October 2015, plaintiff reported other sexist and derogatory comments made by

17  defendant Potter regarding other female employees to defendant Young and to City Human

18  Resources.  *See* Dkt. 186, at 5; *see also* Dkt. 297-3, at 8–9 (reflecting defendant Potter's 2015

19  comments calling another female attorney a "bitch," and offering to "throw in a wig" as part of a

20  severance package to another female employee undergoing cancer treatment).  In November

21  2015, defendant City procured outside counsel to investigate plaintiff's complaint and other

22  claims of gender discrimination.  *See* Dkts. 186, at 5.  Plaintiff alleges that on November 12,

23  2015, she was scheduled to participate in the discrimination investigation; however, defendants

24

1 | Young and Potter prevented her from doing so. *See id.* Instead, plaintiff alleges that defendants

2 | Young and Potter "pulled [plaintiff] into a disciplinary meeting," accused her of misconduct, and

3 | placed her on administrative leave. *See id.* Plaintiff further alleges that defendant Young told

4 | plaintiff that she was the subject of an investigation, but he refused to tell her the nature or

5 | subject of the investigation. *See id.* Plaintiff claims that the decision to place her on leave was

6 | in retaliation for having complained about defendant Potter's discriminatory comments and

7 | defendants' other discriminatory conduct. *See id.* at 10. Defendants Young and Potter dispute

8 | that their decision to place plaintiff on leave was motivated by retaliation. *See* Dkt. 266.

9 |    After being placed on administrative leave, later in November 2015, plaintiff filed an

10 | internal complaint of discrimination, retaliation, and hostile work environment with defendant

11 | City's Human Resources, which was investigated. *See* Dkt. 186, at 6; *see also* Dkt. 297-3

12 | (executive summary report of the investigation). While still on leave, plaintiff alleges that

13 | despite repeated requests, defendant City failed to provide plaintiff with reasons for her being

14 | placed on leave. *See* Dkt. 186, at 6. Plaintiff alleges that upon her return, four months after

15 | being placed on leave, defendants Potter and Young reassigned some of her job duties and that

16 | defendant City also delayed her merit pay increase. *See id.* Plaintiff further alleges that six

17 | months after her return from administrative leave, in November 2016, defendants Holmes,

18 | Potter, and Young again reassigned her job duties. *See id.* at 7.

19 |    In September 2017, plaintiff submitted a whistleblower complaint to defendant City after

20 | learning about other female employees' claims of gender discrimination and hostile work

21 | environment against defendant City. *See* Dkt. 186, at 7; *see also* Dkt. 261-5 (plaintiff's 2017

22 | whistleblower complaint). Plaintiff alleges that her complaint was never addressed. *See id.*

23 |

24 |

On November 21, 2017, plaintiff initiated this lawsuit against defendants. *See* Dkt. 1. After filing her complaint, and for some time thereafter, plaintiff continued to be employed by and to represent defendant City. In June 2019, following discovery, defendants filed motions for summary judgment (Dkts. 100, 102, 107), which the District Court granted in part and denied in part in August 2019. *See* Dkt. 170; *see also* Dkt. 181 (denying defendants Potter and Young's motions for reconsideration of Dkt. 170).

On June 26, 2019, defendant City, through defendant Holmes, terminated plaintiff's employment. Plaintiff alleges that her termination was "in retaliation for her whistleblower complaints and her opposition to [the] City's discriminatory policies and conduct." Dkt. 186, at 8. Plaintiff alleges that defendant City falsely accused plaintiff of unethical conduct in connection with her termination. *See id.* at 12. Defendant City disputes that it terminated plaintiff's employment in retaliation for plaintiff's complaints. *See* Dkt. 289, at 6. Rather, defendant City asserts that plaintiff's employment was terminated because she allegedly "repeatedly violated mandatory fiduciary obligations owed to the City," plaintiff's former client. *See id.*

After her employment was terminated, plaintiff filed the now operative second amended complaint in October 2019. *See* Dkt. 186. Additional discovery followed. As relevant here, plaintiff asserts that defendants discriminated against her based on her gender in violation of Washington State's Law Against Discrimination ("WLAD"), RCW 49.60.101, .180 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2. *See id.* at 8–10. Plaintiff also claims that defendants retaliated against her for engaging in protected activity in violation of WLAD, RCW 49.60.180, and Title VII, 42 U.SC. § 2000e-3. *See id.* at 10–11. Additionally, plaintiff claims that defendant City deprived her of her protected liberty interest in her good

1    name and reputation in violation of the Fourteenth Amendment and wrongfully terminated her

2    employment in violation of public policy. *See id.* at 12–13.

3        Plaintiff and defendants City, Young, and Potter now seek summary judgment as to

4    plaintiff's claims of discrimination, retaliation, deprivation of a liberty interest, and wrongful

5    discharge. *See* Dkts. 260, 262, 266, 268. Defendant Holmes also joins defendant Potter's

6    motion for summary judgment. *See* Dkt. 270. The parties' motions have been fully briefed, and

7    the matter is now ripe for decision. *See* Dkts. 260, 261, 262, 263, 266, 267, 268, 269, 270, 289,

8    290, 291, 292, 293, 294, 295, 296, 297, 298, 299, 300, 301, 302, 303.

9                                   **LEGAL STANDARD**

10       Summary judgment is appropriate if a moving party shows that "there is no genuine

11   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

12   R. Civ. P. 56(a). The materiality of a given fact is determined by the required elements of the

13   substantive law under which the claims are brought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

14   242, 248 (1986). Where there is a complete failure of proof concerning an essential element of

15   the nonmoving party's case on which the nonmoving party has the burden of proof, all other

16   facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law.

17   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must

18   view the evidence presented through the prism of the substantive evidentiary burden").

19       When presented with a motion for summary judgment, the court shall review the

20   pleadings and evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S.

21   at 255. Weighing of evidence and drawing legitimate inferences from facts are jury functions

22   and not the function of the court. *See United Steel Workers of Am. v. Phelps Dodge Corps.*, 865

23

24

1  F.2d 1539, 1542 (9th Cir. 1989).  If the material evidence is in genuine dispute, a motion for

2  summary judgment dismissal should be denied.

3  **DISCUSSION**

4  The Court will address each motion for summary judgment in the order filed.

5  **I.      Defendant City's Partial Motion for Summary Judgment**

6  In its motion for partial summary judgment, defendant City seeks dismissal of plaintiff's

7  claim under 42 U.S.C. § 1983 that defendant City allegedly deprived plaintiff of her protected

8  liberty interest in her good name and reputation in violation of the Fourteenth Amendment

9  (Count 7).  *See* Dkt. 260, at 1, 13–24.  Defendant City also seeks dismissal of plaintiff's claim

10  that defendant City allegedly terminated her employment in violation of public policy (Count 8).

11  *See id.* at 1, 3–13.  As discussed below, the Court recommends granting in part and denying in

12  part defendant City's motion for summary judgment.

13  **A.      Count 7 – Deprivation of Liberty Interest**

14  Plaintiff alleges that she has a constitutionally protected liberty interest in her good name

15  and reputation for honesty.  *See* Dkt. 186, at 12.  Plaintiff alleges that defendant City deprived

16  her of this protected liberty interest by falsely accusing her of unethical conduct in connection

17  with the termination of her employment with the City.  *See id.* at 8, 12.  Plaintiff further alleges

18  that defendant City, through its agents, repeated these false accusations to the City's staff.  *See*

19  *id.* at 8.  Plaintiff alleges that she challenged the validity of defendant City's accusations and that

20  defendant City failed to provide plaintiff a hearing to determine the legitimacy of the

21  accusations.  *See id.* at 8, 9.  As a result, plaintiff claims that defendant City harmed her

22  professional reputation and denied plaintiff due process of law in violation of the Fourteenth

23  Amendment.  *See id.* at 12.

24

1    Defendant City argues that plaintiff's claim fails as a matter of law because (1) defendant

2    City's statements regarding plaintiff's alleged ethical misconduct are true, and therefore, plaintiff

3    cannot state a *prima facie* claim; and (2) plaintiff was not entitled to a name clearing hearing.

4    *See* Dkt. 260, at 13–24.  In support of its motion, defendant City provides copies of policy and

5    personnel documents, excerpts from plaintiff's depositions, and other evidence purporting to

6    show the truth of plaintiff's alleged unethical conduct.  *See* Dkt. 261.

7    In response, plaintiff argues that there is at least a material dispute as to whether

8    defendant City denied her a name-clearing hearing in violation of the Fourteenth Amendment.

9    *See* Dkt. 294, at 13–15.  Plaintiff further argues that defendant City has failed to address the

10    actual elements of plaintiff's claim and that there are no undisputed issues of fact in defendant

11    City's favor.  *See id.* at 15–16.

12    Additionally, in support of defendant City's motion, defendant Young argues that

13    plaintiff's claim is barred because plaintiff never requested a name-clearing hearing.  *See* Dkt.

14    266, at 22.  Plaintiff had the opportunity to respond to defendant Young's argument, but she

15    declined to do so.  *See* Dkt. 296.

16    "The Fourteenth Amendment protects against deprivation of liberty and property interests

17    without due process of law." *Kramer v. Cullinan*, 878 F.3d 1156, 1162 (9th Cir. 2018) (citation

18    omitted).  "A person's liberty interest is implicated if the government levels a charge against

19    [her] that impairs [her] reputation for honesty or morality." *Id.* (citation omitted).  "If the

20    government, in the course of terminating a person's employment, publicly discloses stigmatizing

21    information, the employee is entitled to a 'name-clearing hearing.'" *Id.* (quoting *Cox v.

22    Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004)); *see also Bathke v. City of Ocean Shores*, No.

23    C19-5338 BHS, 2019 WL 4917064, at *6 (W.D. Wash. Oct. 4, 2019).

24

1    To demonstrate that plaintiff has a protected liberty interest at stake, a plaintiff must

2    demonstrate that: '(1) the accuracy of the charge is contested, (2) there [was] some public

3    disclosure of the charge, and (3) the charge [was] made in connection with the termination of

4    employment.'" *Kramer*, 878 F.3d at 1162 (quoting *Guzman c. Shewry*, 552 F.3d 941, 955 (9th

5    Cir. 2009)).  In order to pursue a due process claim, plaintiff must also demonstrate that the

6    defendant's statements were substantially false.  *See Campanelli v. Bockrath*, 100 F.3d 1476,

7    1484 (9th Cir. 1996) (citation omitted).  Furthermore, "a plaintiff who fails to request a name-

8    clearing hearing is precluded from asserting a substantive due process claim on an injury to

9    reputation theory." *Reiber v. City of Pullman*, 918 F. Supp. 2d 1091, 1102 (E.D. Wash. 2013)

10   (citing *Quinn v. Shirey*, 293 F.3d 315, 322 (6th Cir. 2002); *Gillum v. City of Kerrville*, 3 F.3d

11   117, 121 (5th Cir. 1993); *Winskowski v. City of Stephen*, 442 F.3d 1107, 1110 (8th Cir. 2006));

12   *see also Humann v. City of Edmonds*, No. C13-101 MJP, 2014 WL 4161974, at *10 (W.D.

13   Wash. Aug. 19, 2014) (acknowledging that district courts in the Ninth Circuit have imposed the

14   requirement that a plaintiff must show that she requested a name-clearing hearing in order to

15   pursue a due process claim).

16    Here, the law is clear that plaintiff would have been entitled to a name-clearing hearing.

17   *See Kramer*, 878 F.3d at 1162.  Nonetheless, plaintiff has not alleged, nor has she offered any

18   evidence that she requested any such hearing in connection with defendant City's accusations of

19   plaintiff's unethical conduct and the termination of her employment.  *See* Dkts. 149-1, at 6; 186,

20   at 8, 12 (stating only that she did not receive a name-clearing hearing).  Even viewing the facts in

21   the light most favorable to plaintiff, the Court finds that plaintiff has failed to demonstrate a

22   material issue of fact that she requested any name-clearing hearing.  Therefore, plaintiff has

23   failed to show that defendant City violated her Fourteenth Amendment substantive due process

24

1    rights, and thus, defendant City is entitled to summary judgment as a matter of law.  *See Reiber*,

2    918 F. Supp. at 1102; *see also Quinn*, 293 F.3d at 322 ("[B]efore asserting [a] liberty interest

3    claim, [p]laintiff [is] required to show that [s]he requested a name-clearing hearing and was

4    denied that opportunity.").

5            Accordingly, the Court recommends granting summary judgment for defendant City as to

6    plaintiff's claim of deprivation of a liberty interest in violation of the Fourteenth Amendment.

7                **B.        Count 8 – Wrongful Discharge in Violation of Public Policy**

8            Plaintiff alleges that defendant City terminated her employment without justification and

9    in retaliation for filing a whistleblower complaint and for opposing the City's discriminatory

10   policies and conduct.  Dkt. 186, at 8, 12.  Plaintiff further alleges that defendant City terminated

11   her employment in order to discourage her from reporting and opposing gender-based

12   discrimination, hostile work environment, and retaliation allegedly committed by defendant

13   City's employees and officials.  *See id.* at 12.  Plaintiff claims that defendant City's wrongful

14   termination of her employment violated public policy.  *See id.*

15           Defendant City argues that plaintiff's claim of wrongful discharge in violation of public

16   policy fails as a matter of law because Title VII and WLAD are exclusive statutory remedies

17   barring her state common law claims and because Title VII and WLAD offer a broader range of

18   remedies than plaintiff's claim of wrongful discharge.  *See* Dkt. 260, at 6–10.

19           In response, plaintiff argues that Title VII and WLAD are not exclusive statutory

20   remedies that would bar her claim of wrongful discharge.  *See* Dkt. 294, at 6.  Plaintiff further

21   argues that it is undisputed that she engaged in protected activity and that there are material

22   issues of fact as to defendant City's actual reason for terminating plaintiff's employment.  *See id.*

23   at 7–13.

24

1    Generally, employment in Washington State may be terminated at will by either

2    employee or employer.  *See Norvell v. BNSF Ry. Co.*, No. C17-5683 BHS, 2018 WL 263312, at

3    *3 (W.D. Wash. Jan. 2, 2018); *see also Ford v. Trendwest Resorts, Inc.*, 43 P.3d 1223, 1226

4    (Wash. 2002) ("In Washington, the general rule is that an employer can discharge an at-will

5    employee for no cause, good cause or even cause morally wrong without fear of liability."

6    (citation omitted)).  However, "[o]ne narrow exception to the general at-will employment rule

7    prohibits an employer from discharging an employee 'when the termination would frustrate a

8    clear manifestation of public policy.'"  *Norvell*, 2018 WL 263312, at *3 (quoting *Roe v.*

9    *TeleTech Customer Cage Mgmt. (Colorado)*, 257 P.3d 586, 595 (Wash. 2011)).

10    To establish the common law cause of action for wrongful discharge in violation of

11    public policy, plaintiff must show:  (1) the existence of a clear public policy; (2) that

12    discouraging the conduct in which the plaintiff engaged would jeopardize the public policy; (3)

13    that the public-policy-linked conduct caused the dismissal from employment; and (4) that

14    defendants are unable to offer an overriding justification for the dismissal.  *Roe*, 257 P.3d at 595

15    (citation omitted).  A claim of wrongful discharge in violation of public policy has generally

16    arisen in four situations:  "(1) where employees are fired for refusing to commit an illegal act; (2)

17    where employees are fired for performing a public duty or obligation, such as serving jury duty;

18    (3) where employees are fired for exercising a legal right or privilege, such as filing workers'

19    compensation claims; and (4) where employees are fired in retaliation for reporting employer

20    misconduct, i.e., whistleblowing."  *Id.* (internal quotation omitted).

21    As relevant here, regarding the second element, "plaintiffs must show they engaged in

22    particular conduct and the conduct *directly relates* to the public policy or was *necessary* for the

23    effective enforcement of the public policy."  *Rose v. Anderson Hay & Grain Co.*, 358 P.3d 1139,

24

1    1143 (Wash. 2015) (emphasis in original) (quoting *Gardner v. Loomis Armored Inc.*, 913 P.3d

2    377, 384 (Wash. 1996)).  However, a plaintiff need not establish the inadequacy of alternative

3    statutory remedies in asserting a claim of wrongful discharge in violation of public policy.  *See*

4    *id.* at 1145–46 (explicitly disavowing and overruling case law holding otherwise).  Rather, in

5    determining whether a wrongful discharge claim exists, "[c]ourts [] must consider whether a

6    statutory remedy is intended to be exclusive."  *Id.* at 1146.  "[A]bsent clear legislative intent to

7    modify the common law, its remedies are generally not foreclosed merely because other avenues

8    for relief exist."  *Id.* at 1145.

9        Here, defendant City does not factually dispute that plaintiff engaged in protected activity

10   embodied by public policy in Title VII and WLAD.  *See* Dkt. 260, at 6.  While defendant City

11   denies plaintiff's allegations, it does not claim that plaintiff has failed to produce evidence

12   sufficient to support plaintiff's claim of wrongful discharge in violation of public policy.  *See id.*

13   Rather, defendant City argues that Title VII and WLAD are exclusive statutory remedies that bar

14   plaintiff's common law claim.  *See* Dkt. 260, at 6–10.  As discussed below, defendant City's

15   argument is unpersuasive.

16       "Common law remedies should be preempted by statutory law only where the legislature

17   either implicitly or explicitly expresses an intent to do so."  *Rose*, 358 P.3d at 1146.  Under

18   WLAD, "[a]ny person deeming [] herself injured by any act in violation of this chapter shall

19   have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover

20   the actual damages sustained by the person, or both, together with the cost of suit including

21   reasonable attorneys' fees *or any other appropriate remedy* authorized by this chapter or [Title

22   VII]."  RCW 49.60.030(2) (emphasis added).  Further, Title VII explicitly states, "[n]othing in

23   this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty,

1    or punishment provided in any present or future law of any State or political subdivision of a

2    State, other than any such law which purports to require or permit the doing of any act which

3    would be an unlawful employment practice under this subchapter."  42 U.S.C. § 2000e-7.

4         The plain language of WLAD and Title VII do not express any intent to preempt

5    plaintiff's common law claim for wrongful discharge in violation of public policy.  Indeed, the

6    Ninth Circuit has previously stated that in Title VII, "Congress has indicated that state laws will

7    be pre-empted only if they actually conflict with federal law."  *Coal. for Econ. Equity v. Wilson*,

8    122 F.3d 692, 710 (9th Cir. 1997); *see also Davis v. Jobs For Progress, Inc.*, 427 F. Supp. 479,

9    483 (D. Ariz. 1976) (stating that Title VII does not preempt state regulation nor the imposition of

10   state remedies for violations arising out of the same circumstances).  And WLAD explicitly

11   provides for any other appropriate remedy available under Title VII.  *See* RCW 49.60.030(2).

12        Further, defendant City has cited no legal authority holding that Title VII and WLAD are

13   exclusive statutory remedies that bar plaintiff's claim of wrongful discharge in this case.  Indeed,

14   recent cases in this district have permitted plaintiffs to simultaneously proceed on claims under

15   Title VII, WLAD, and wrongful discharge in violation of public policy.  *See, e.g.*, *Simmons v.*

16   *Safeway, Inc.*, 388 F. Supp. 3d 1305, 1313 (W.D. Wash. 2019), *rev'd and remanded on other*

17   *grounds*, 820 F. App'x 579 (9th Cir. 2020) (not addressing exclusivity, but allowing plaintiff to

18   proceed with Title VII, WLAD, and wrongful discharge claims based on plaintiff's complaints of

19   employer misconduct); *Alexander v. United States Gypsum Co.*, No. C18-0810RSL, 2018 WL

20   4931625, at *3 (W.D. Wash. Oct. 11, 2018) (finding that WLAD and wrongful discharge claims

21   based on WLAD public policy are not duplicative and that a plaintiff may proceed on both

22   claims).

23

24

1    Additionally, although defendant City asserts that Title VII and WLAD offer an

2    alternative and broader range of remedies beyond those available under common law (Dkt. 260,

3    at 6–7), this does not preclude plaintiff's claim of wrongful discharge in violation of public

4    policy. *See Rose*, 258 F.3d at 1145 (explicitly disavowing any requirement that a plaintiff must

5    demonstrate the inadequacy of alternative remedies and stating that "remedies are generally not

6    foreclosed merely because other avenues for relief exist."). Finally, although defendant City

7    argues that the doctrine of employment at-will further supports its motion for summary judgment

8    (Dkt. 260, at 11–13), this argument appears to ignore the purpose of plaintiff's claim. The

9    common law claim of wrongful discharge in violation of public policy is an "exception to the

10   general at-will employment rule." *Norvell*, 2018 WL 263312, at *3.

11   Therefore, finding that WLAD and Title VII do not preclude plaintiff's possible recovery

12   under a claim of wrongful discharge in violation of public policy, the Court concludes that

13   plaintiff's claim survives summary judgment. As defendant City makes no additional arguments

14   challenging the legitimacy of this claim (*see* Dkt. 260, at 3–13), defendant City has failed to

15   show that it is entitled to summary judgment as a matter of law.

16   Accordingly, the Court recommends denying defendant City's motion for summary

17   judgment dismissal of plaintiff's claim for wrongful discharge in violation of public policy.

18   **II.    Plaintiff's Partial Motion for Summary Judgment**

19   Plaintiff seeks summary judgment as to her claims against defendant City based on

20   defendant City's alleged retaliation against plaintiff in violation of Title VII (Count 3) and in

21   violation of WLAD (Count 4). *See* Dkt. 262. In her motion, plaintiff argues that she is entitled

22   to summary judgment as to her claims of retaliation against defendant City because there is no

23   question of material fact that defendant City terminated her employment in retaliation for her

24

1   engagement in protected activity.  *See* Dkt. 262, at 6–12.  In support of her motion, plaintiff

2   relies on defendant City's responses to interrogatories and defendant Holmes' deposition

3   testimony.  *See* Dkts. 263-2, 263-3.

4        In response, defendant City argues that plaintiff's motion should be denied because she

5   never asserted claims of retaliation under Title VII and WLAD based on defendant City's

6   termination of plaintiff's employment.  *See* Dkt. 289, at 2–5.  Defendant City also argues that

7   even if plaintiff had properly asserted claims of retaliatory discharge under Title VII and WLAD,

8   she has failed to demonstrate that she in entitled to summary judgment on those claims.  *See id.*

9   at 6–20.  In support of its response, defendant City relies on pleadings and court orders filed in

10  this case, declarations, and other evidence of record.  *See* Dkts. 153, 171, 263-3, 290, 291.

11       Defendant Holmes also filed a response in opposition to plaintiff's motion for summary

12  judgment.  *See* Dkt. 292.  Defendant Holmes also argues that plaintiff's motion should be denied

13  because she failed to assert any claims of retaliatory discharge under Title VII or WLAD in her

14  complaint.  *See id.* at 5–9.  Defendant Holmes further argues that any claim for retaliatory

15  discharge against him under Title VII fails because Title VII does not permit liability against

16  individuals.  *See id.* at 9.

17       The Court will first address defendant Holmes' arguments in opposition to plaintiff's

18  motion for summary judgment.

19              **A.    Claims Against Defendant Holmes**

20       As an initial matter, plaintiff moves to strike defendant Holmes' response and supporting

21  declaration (Dkts. 292, 293) on the grounds that the response is overlength pursuant to Local

22  Civil Rule 7.  *See* Dkt. 302, at 9.  Plaintiff also argues that defendant Holmes' response "takes

23  aim at a phantom claim" that plaintiff has not asserted against him.  *Id.* at 9–10.

24

1    Although the Court is not persuaded by plaintiff's argument that defendant Holmes'

2 responsive brief "must" be read as an overlength extension of defendant City's response, the

3 Court agrees that plaintiff asserts a claim of retaliation under Title VII only against defendant

4 City—not defendant Holmes. *See* Dkt. 186, at 10; *see also* Dkt. 262 (seeking summary

5 judgment against defendant City only). Therefore, the Court need not address the merits of

6 defendant Holmes' argument that any Title VII claim against him must fail a matter of law—

7 there is no such claim, so the Court need not dismiss it.

8    Accordingly, the Court grants plaintiff's motion to strike defendant Holmes' responsive

9 brief as to this issue.

10    **B.    Claims Against Defendant City**

11    In her complaint, plaintiff alleges that she engaged in protected activity by reporting and

12 opposing defendant City's gender-based discriminatory practices. Dkt. 186, at 10. Plaintiff

13 further alleges that in June 2019, defendant City terminated her employment in retaliation for her

14 whistleblower complaints and her opposition to defendant City's discriminatory policies and

15 conduct. *Id.* at 8. Plaintiff claims defendant City retaliated against her in violation Title VII, 42

16 U.S.C. § 2000e-3, by placing her on involuntary leave, publishing stigmatizing statement about

17 plaintiff to colleagues, delaying investigation of plaintiff's workplace complaints, delaying

18 plaintiff's merit pay increase, and altering plaintiff's regular workload. *See id.* at 10. Plaintiff

19 also claims that defendant City's collective actions constitute retaliation under WLAD, RCW

20 49.60.180. *Id.* at 11.

21    Plaintiff argues that she is entitled to summary judgment as a matter of law as to her

22 claims of retaliation against defendant City under Title VII and WLAD because defendant City

23 admitted that plaintiff's employment was terminated in retaliation for her protected activities.

24

1    *See* Dkt. 262, at 1, 6–12.  Defendant City opposes plaintiff's motion, arguing that (1) plaintiff

2    seeks summary judgment on claims that she never administratively exhausted or asserted in her

3    complaint, and (2) there are material issues of fact regarding the reasons for plaintiff's

4    termination of employment that preclude summary judgment.  *See* Dkt. 289, at 2–20.

5        The Court need not determine whether plaintiff properly asserted her claims of retaliatory

6    discharge in violation of Title VII and WLAD in considering plaintiff's motion because, even

7    assuming that plaintiff properly raised these claims, there are material issues of fact that preclude

8    summary judgment.

9        Under Title VII and WLAD, it is unlawful for an employer to discriminate against an

10   employee because the employee has opposed an unlawful employment practice or filed a charge,

11   testified, assisted, or participated in an investigation or proceeding pursuant to Title VII or

12   WLAD.  *See* 42 U.S.C. § 2000e-3(a); RCW 49.60.210(1).  Because Washington courts look to

13   federal law under Title VII when analyzing retaliation claims under WLAD, the Court considers

14   plaintiff's Title VII and WLAD claims together.  *See Stegall v. Citadel Broad. Co.*, 350 F.3d

15   1061, 1065 (9th Cir. 2003) (citations omitted); *see also Graves v. Dep't of Game*, 887 P.2d 424,

16   428 (Wash. 1994).  Courts analyze Title VII and WLAD claims of retaliation under the burden

17   shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See*

18   *Stegall*, 350 F.3d at 1066.

19       Under the *McDonnell Douglas* framework, plaintiff must first make out a *prima facie*

20   case of retaliation under Title VII and WLAD by demonstrating that (1) she engaged in a

21   protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link

22   between her activity and the employment decision.  *Stegall*, 350 F.3d at 1065–66 (citation

23   omitted).  Once plaintiff makes out a *prima facie* case of retaliation, the burden shifts to

24

1    defendant City to articulate a legitimate, non-retaliatory reason for the adverse employment

2    action.  *See id.* at 1066 (citing *Manatt v. Bank of Am., NA*, 339 F.3d 792, 800 (9th Cir. 2003)).  If

3    defendant City articulates such a reason, plaintiff "bears the ultimate burden of demonstrating

4    that [defendant's] reason was merely a pretext for" a retaliatory motive.  *Id.* (quoting *Manatt*,

5    339 F.3d at 800).

6           For the purposes of this motion, plaintiff and defendant City do not dispute that plaintiff

7    engaged in at least some protected activity and that the termination of plaintiff's employment is

8    considered an adverse employment action.  *See* Dkts. 262, at 7–8; 289, at 9.  However, the

9    parties dispute whether plaintiff has demonstrated that there is a causal link between plaintiff's

10   protected activity and the termination of her employment.  *See* Dkts. 262, at 9; 289, at 9.

11   Plaintiff and defendant City further dispute the legitimacy of defendant City's proffered reasons

12   for terminating plaintiff's employment.  *See* Dkts. 262, at 10–11; 289, at 9–20.

13          Here, plaintiff offers evidence purporting to show that defendant City admitted to

14   terminating plaintiff's employment in retaliation for filing whistleblower complaints and suing

15   the City.  *See* Dkt. 262, at 3 (citing defendant City's responses to plaintiff's interrogatories (Dkt.

16   263-2) and defendant Holmes' deposition testimony (Dkt. 263-3, at 7)).  Plaintiff contends that

17   her proffered evidence is direct evidence of defendant City's retaliation, and therefore, the

18   *McDonnell Douglas* burden shifting framework does not apply.  *See* Dkt. 262, at 9–10 (citing

19   *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002)).  Plaintiff further argues that even absent

20   direct evidence, defendant City's proffered reasons for terminating her employment are

21   pretextual.  *See id.* at 10–11.

22          However, citing to the same evidence relied upon by plaintiff, defendant City argues that

23   the evidence of record merely creates material issues of fact as to the reasons for plaintiff's

24

1    termination, and therefore, plaintiff is not entitled to summary judgment. *See* Dkt. 289, at 6–8;

2    *see also* Dkts. 263-2, 263-3, 290, 291-3.

3         The parties' cited evidence reflects the following: on June 26, 2019, plaintiff's

4    employment was terminated, and defendant City delivered a letter to plaintiff indicating that she

5    had been terminated because she "violated ethical and fiduciary duties owed to the City,

6    [plaintiff's] client." Dkt. 291-3. During an August 2020 deposition, defendant Holmes testified

7    that the decision to terminate plaintiff's employment "began [. . .] when I understood the

8    contents of a whistleblower complaint that was filed" by plaintiff in 2017. Dkts. 263-3, at 5.

9    Defendant Holmes further testified that "it's not the whistleblower complaint itself, it's really the

10    content of the complaint." *Id.* Regarding the contents of plaintiff's whistleblower complaint,

11    defendant Holmes testified that it "caused me to start to have concerns about [plaintiff's]

12    commitment to maintaining client confidences, her loyalty to the City, and her role as a lawyer to

13    the City." *Id.* at 6. Defendant Holmes testified that "[o]ver time there was an accumulation of

14    some additional concerns [. . .] rooted in [plaintiff] fulfilling her ethical obligations to the City as

15    her client," including plaintiff's statements "adverse to her client while she was still advising that

16    client." *Id.* Defendant Holmes' December 2020 declaration is consistent with his prior

17    deposition testimony. *See* Dkt. 290, at 4–6. Defendant City has consistently taken the position

18    that it is unethical for plaintiff to be representing the City in matters involving persons who are

19    making claims against the City for discrimination, harassment and retaliation, while at the same

20    time bringing similar claims on her own behalf against the very client she represents—namely,

21    defendant City. *See, e.g.*, Dkt. 263-2, at 4–10 (defendant City's responses to plaintiff's

22    interrogatories); Dkt. 264 (defendant City's renewed motion to dismiss plaintiff's complaint

23

24

1 based on evidence of ethical misconduct); Dkt. 289, at 6–8 (defendant City's response in

2 opposition to plaintiff's motion for summary judgment (Dkt. 262)).

3            Additionally, in response to plaintiff's interrogatories, defendant City stated that

4 plaintiff's employment was terminated "because of cumulative effects of the then known and

5 documented ethical and fiduciary violations that had been perpetrated by [plaintiff]." Dkt. 263-

6 2, at 9 (also incorporating prior interrogatory responses reflecting plaintiff's purported ethical

7 and fiduciary violations, Dkt. 263-2, at 3–8). Defendant City also responded that "[plaintiff] had

8 a right to pursue her legal claims against the City, her client. However, that did not mean

9 [plaintiff] could disregard her ongoing ethical and fiduciary obligations" that she owed to

10 defendant City. *Id.* at 6.

11            In considering the parties' proffered evidence, it appears that plaintiff has selectively

12 overlooked portions of defendant City's stated reasons for terminating plaintiff's employment.

13 Taking both plaintiff and defendant City's evidence together, and viewing the facts in the light

14 most favorable to defendant City—the nonmoving party—the Court finds that there are material

15 issues of fact regarding defendant City's asserted non-retaliatory reasons for terminating

16 plaintiff's employment. While plaintiff contends that defendant City admitted to terminating her

17 employment because of her protected activity (Dkt. 262, at 9), the parties' proffered evidence is

18 susceptible to more than one reasonable interpretation as to defendant City's reasons for

19 terminating plaintiff's employment—whether defendant City terminated plaintiff's employment

20 because of protected activity or because she purportedly violated ethical and fiduciary

21 obligations owed to the City. Weighing of this evidence, and drawing any inferences therefrom,

22 are jury functions and not the function of the Court. *See United Steel Workers of Am.*, 865 F.2d

23 at 1542. Therefore, plaintiff has failed to demonstrate that she is entitled to summary judgment

24

1    as a matter of law as to her claims of retaliation against defendant City under Title VII and

2    WLAD.

3         Accordingly, the Court recommends denying plaintiff's motion for summary judgment.

4    **III.    Defendant Young's Motion for Summary Judgment**

5         Defendant Young seeks summary judgment dismissal of plaintiff's claim that he

6    retaliated against plaintiff in violation of WLAD, RCW 49.60.180 (Count 4).  *See* Dkt. 266.

7    Defendant Potter joins defendant Young's motion for summary judgment and also seeks

8    dismissal of plaintiff's claim of retaliation under WLAD against him.  *See id.* at 1 n. 1, 9 n. 5;

9    Dkt. 268, at 2.  Defendants Young and Potter also ask the Court to dismiss or strike plaintiff's

10   request for punitive damages against them.  *See* Dkt. 266, at 23.

11   **A.    Count 4 – Retaliation in Violation of WLAD**

12        Plaintiff alleges that during her employment with defendant City, defendants Young and

13   Potter were her supervisors with the power to make personnel decisions regarding plaintiff's

14   employment.  *See* Dkt. 186, at 3.  Plaintiff further alleges that in December 2013 and in October

15   2015, she complained to defendants Young and Potter about discriminatory comments made by

16   defendant Potter, which were investigated.  *See id.* at 4–5.  Thereafter, in November 2015,

17   plaintiff alleges that defendants Young and Potter accused plaintiff of misconduct and placed her

18   on administrative leave.  *See id.* at 5.  Plaintiff claims that defendants Young and Potter's

19   decision to place her on leave was in retaliation for her reporting and opposing defendants'

20   discriminatory conduct, and therefore, in violation of WLAD, RCW 49.60.180.  *See id.* at 10–11.

21        Defendants Young and Potter do not dispute that plaintiff has shown a *prima facie* case

22   of retaliation under WLAD.  *See* Dkt. 266, at 9.  Defendants Young and Potter further note that

23   the District Court previously found that defendants met their burden of producing legitimate,

24

1   non-retaliatory reasons for placing plaintiff on paid administrative leave.  *See id.* (citing Dkts.

2   170, at 49–50; 181, at 5–6).  Accordingly, defendants Young and Potter argue that they are

3   entitled to summary judgment because plaintiff cannot show that their asserted reasons for

4   placing plaintiff on leave were pretext for retaliation.  *See id.* at 9–19.  In support of their motion,

5   defendants Young and Potter rely on defendant Young's declaration (Dkt. 267); the deposition

6   testimony of plaintiff and defendants Young, Potter, and Holmes (Dkts. 269-1, 269-2, 269-3,

7   269-6); and other pleadings and evidence of record.  *See* Dkt. 266, at 9.

8          In response, plaintiff argues that (1) the "law of the case doctrine" precludes summary

9   judgment, and (2) defendants Young and Potter's motion gives rise to additional material issues

10  of fact regarding defendants' purported reasons for placing plaintiff on paid administrative leave.

11  *See* Dkt. 296, at 5–6, 9–19.

12         As an initial matter, plaintiff argues that defendant Young and Potter's motion is barred

13  by the "law of the case doctrine" because the District Court previously denied defendants'

14  motions for summary judgment on the same claims of retaliation.  Dkt. 296, at 5–6 (citing Dkts.

15  170, at 50; 181, at 7).  "The law-of-the-case doctrine generally provides that when a court

16  decides upon a rule of law, the decision should continue to govern the same issues in subsequent

17  stages in the same case."  *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir.

18  2018) (citation omitted).  However, the doctrine "does not preclude a court from reassessing its

19  own legal rulings in the same case."  *Id.* ("The law of the case doctrine does not [] bar a court

20  from reconsidering its own orders before judgment is entered or the court is otherwise divested

21  of jurisdiction over the order."  (citation omitted)).  "Once the plaintiff elects to file an amended

22  complaint, the new complaint is the only operative complaint before the district court."  *Id.*

23

24

1    (citation omitted).  Where a motion is filed challenging the amended complaint, the district court

2    "is not [] bound by any law of the case."  *Id.*

3          Here, plaintiff elected to file an amended complaint after the District Court denied

4    defendant Young and Potter's prior motion for summary judgment.  *See* Dkts. 170, 181, 186.

5    Therefore, plaintiff's second amended complaint is the operative complaint, and the Court is not

6    bound by any law of the case in considering defendants' subsequent motions for summary

7    judgment.  *See Askins*,  899 F.3d at 1042; *see also Clark v. Mason*, No. C04-1647-JCC, 2008

8    WL 336790, at *4 (W.D. Wash. Feb. 5, 2008) ("By entertaining a subsequent motion for

9    summary judgment on the retaliation issue, the Court would not be changing its interpretation of

10   the law, but rather deciding whether [d]efendants' subsequent showing meets the Rule 56

11   standard.  Thus, '[t]he law of the case as established by the ruling on the first summary judgment

12   motion [is] not so inflexible as to preclude a second look.'" (quoting *Cable & Computer Tech.*

13   *Inc. v. Lockheed Sanders, Inc.*, 214 F.3d 1030, 1038 (9th Cir. 2000)).

14         Turning to the merits of defendants Young and Potter's motion, as noted above (*see*

15   *supra* Section II.B), under the *McDonnell Douglas* framework, plaintiff must first make out a

16   *prima facie* case of retaliation under WLAD by demonstrating that (1) she engaged in a protected

17   activity, (2) she suffered an adverse employment action, and (3) there was a causal link between

18   her activity and the employment decision.  *Stegall*, 350 F.3d at 1065–66 (citation omitted).

19   Defendants Young and Potter appear to concede, and the District Court previously found, that

20   plaintiff has demonstrated a *prima facie* claim of retaliation.  *See* Dkt. 170, at 44–49; Dkt. 266, at

21   9.

22         Once plaintiff makes out a *prima facie* case of retaliation, the burden shifts to defendants

23   Young and Potter to articulate a legitimate, non-retaliatory reason for the adverse employment

24

action.  *See id.* at 1066 (citing *Manatt v. Bank of Am., NA*, 339 F.3d 792, 800 (9th Cir. 2003)).

Here, defendants Young and Potter assert that they placed plaintiff on paid administrative leave

based on their concerns that plaintiff was not acting in the best interests of her client, defendant

City, and because of their concerns regarding plaintiff's ability to provide legal services at that

time.  *See* Dkt. 170, at 50 (the District Court's prior order finding that defendants had produced a

legitimate reason for placing plaintiff on leave); Dkt. 266, at 11 (defendants' motion reflecting

the same).  Plaintiff does not appear to dispute that defendants Young and Potter have satisfied

their burden of producing legitimate, non-retaliatory reasons for placing plaintiff on leave.  *See*

Dkt. 296.  However, plaintiff argues that material issues of fact remain as to whether defendants'

asserted reasons were improperly motivated, and therefore, pretextual and/or actually motivated

by retaliation against plaintiff.  *See id.* at 10–24.  Therefore, the Court turns to the disputed issue

of pretext.

Once plaintiff demonstrates a *prima facie* case of retaliation, and defendants have

proffered a legitimate, non-retaliatory reason for taking an adverse employment action, plaintiff

"bears the ultimate burden of demonstrating that [defendants'] reason was merely a pretext for" a

retaliatory motive.  *Stegall*, 350 F.3d at 1066 (citation omitted).  A plaintiff may survive

summary judgment "by offering sufficient evidence to create a genuine issue of material fact

either (1) that the [defendant] employer's articulated reason for its action is pretextual or (2) that

although the employer's stated reason is legitimate, [retaliation] nevertheless was a substantial

factor motivating the employer."  *Scrivener v. Clark College*, 441, 334 P.3d 541, 544 (Wash.

2014) (citing *McDonnell*, 411 U.S. at 93). "Once the record contains reasonable but competing

inferences of both [retaliation] and non[retaliation], it is for the jury to decide between the

competing inferences.  *Edman v. Kindred Nursing Ctrs. West, LLC*, No. 14-CV-01280 BJR,

1    2016 WL 6836884, at *6–7 (W.D. Wash. Nov. 21, 2016) (stating that the retaliation must be a

2    substantial factor behind the adverse employment action).

3    Although proof supporting a plaintiff's *prima facie* claim of retaliation may be relevant to

4    her proof of the defendant's pretext, "[t]he difference between the first and the third steps of the

5    *McDonnell Douglas* framework is not without some consequence." *Hawn v. Executive Jet*

6    *Mgmt., Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010) (noting that a plaintiff's burden at the *prima*

7    *facie* stage is less onerous than at the pretext stage).  "[A] plaintiff at the pretext stage must

8    produce evidence in addition to that which was sufficient for her *prima facie* case in order to

9    rebut the defendant's showing" of a nonretaliatory reason for the allegedly retaliatory conduct.

10    *Godwin v. Hunt Wesson, Inc.* 150 F.3d 1217, 1220 (9th Cir. 1998).  However, "the trier of fact

11    may [also] consider the same evidence that the plaintiff has introduced to establish a *prima facie*

12    case in determining whether the defendant's explanation for the employment decision is

13    pretextual." *Lowe v. City of Monrovia*, 775 F.2d 998, 1008 (9th Cir. 1985); *see also Stegall*, 350

14    F.3d at 1069 ("[I]t is improper to ignore evidence in support of [plaintiff]'s *prima facie* case" in

15    analyzing pretext.).

16    When a plaintiff offers circumstantial evidence that an employer's motives were different

17    from its stated motives, the Court requires "specific" and "substantial" evidence of pretext to

18    survive summary judgment.  *Stegall*, 350 F.3d at 1066.  Overall, "[t]he plaintiff in an

19    employment discrimination [or retaliation] action need produce very little evidence in order to

20    overcome an employer's motion for summary judgment [. . .] because the ultimate issue is one

21    that can only be resolved through a searching inquiry—one that is most appropriately conducted

22    by a factfinder, upon a full record." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d

23

24

1  1115, 1124 (9th Cir. 2004); *see also Stegall*, 250 F.3d at 1072 ("[W]e require very little evidence

2  to survive summary judgment.").

3        Here, the Court finds that there are material issues of fact that preclude summary

4  judgment as to plaintiff's claims of retaliation against defendants Young and Potter.  Although

5  defendants Young and Potter argue that there is no evidence to show pretext, and that their

6  decision to place plaintiff on leave was reasonable, plaintiff has offered specific and substantial

7  circumstantial evidence suggesting that defendants' proffered reasons for placing her on leave

8  were pretextual.

9        Plaintiff argues that defendants Young and Potter's reasons for placing plaintiff on paid

10  administrative leave were factually false and inconsistent.  *See* Dkt. 296, at 16–19.  Plaintiff also

11  argues that placing her on leave was in "sharp contrast" to the discipline that defendant Potter

12  received for his own unprofessional conduct.  *Id.* at 13.  In support of her argument, plaintiff

13  provides evidence that at the time she was placed on administrative leave, no rationale was given

14  as to the reasons she was placed on leave.  *See* Dkt. 297-1.  Plaintiff further cites evidence that a

15  month after being placed on leave, defendant Young then stated that plaintiff was placed on

16  leave so that defendant City could investigate (1) an October 2015 incident regarding plaintiff's

17  failure to provide legal advice on an issue, and (2) plaintiff's "unusual" and "unprofessional"

18  behavior during a November 2015 litigation strategy meeting.  *See* Dkt. 297-2.  Regarding

19  defendant Young's first reason, plaintiff cites evidence that she did in fact provide legal advice

20  as to the issue cited in defendant Young's letter, and therefore, plaintiff argues that this reason is

21  false.  *See* Dkts. 296, at 17; 297-7; *see also* Dkts. 297-2; 297-3, at 11; 297-7, at 1 (reflecting that

22  plaintiff "tried to tell" defendant Potter that she had previously provided the legal advice at issue

23  prior to being placed on leave).

24

1    As for the second reason, plaintiff provides evidence that although she was placed on

2  leave for her behavior during a November 2015 meeting, defendant Potter's own unprofessional

3  behavior did not result in him being placed on administrative leave.  *See* Dkts. 296, at 13; 297-4,

4  at 2 (reflecting that defendant Potter was merely counseled and required to attend training

5  regarding his own unprofessional behavior).  Here, the fact that plaintiff was placed on leave for

6  a reason that plaintiff claims is factually false, coupled with the inconsistent application of

7  discipline to an employee who lodged complaints, is sufficiently specific and substantial

8  evidence from which a jury could conclude that the decision to place plaintiff on leave was a

9  pretext for retaliation.  *See Scrivener*, 334 P.3d at 547 (To show pretext, a plaintiff can show that

10  a defendant's articulated reason for an adverse employment action "has no basis in fact" or "was

11  not really a motivating factor for the decision.").

12    Additionally, plaintiff further identifies the "incriminating timing" of defendants Young

13  and Potter's decision to place plaintiff on paid administrative leave on November 12, 2015,

14  immediately after she complained about discriminatory conduct and retaliation.  *See* Dkt. 296, at

15  11, 14 (citing Dkt. 170, at 12–13).  Defendants Young and Potter argue that the decision to place

16  plaintiff on paid administrative leave was made prior to the November 12, 2015, meeting, and

17  therefore, plaintiff's complaints raised during the same meeting could not have been a substantial

18  factor in the decision to place plaintiff on leave.  *See* Dkt. 266, at 14.

19    Here, it is undisputed that a signed memorandum placing plaintiff on administrative leave

20  was prepared prior to the November 12, 2015, meeting.  *See* Dkt. 266, at 15.  However, both

21  defendants Young and Potter testified that the decision to place plaintiff on administrative leave

22  had not actually been made prior to that meeting.  *See* Dkt. 103-6, at 12 (defendant Potter's

23  testimony that at the time of the November 12, 2015, meeting, defendants "were only

24

1    considering placing plaintiff on leave."); Dkt. 103-9, at 4 (defendant Young's testimony

2    reflecting the same).  Further, defendant Potter testified that, just before placing plaintiff on

3    administrative leave, plaintiff raised complaints regarding defendant Potter calling women

4    "bitches" and recalling defendant Potter's comment about another female employee with the "big

5    tits." Dkt. 103-6, at 12; *see also* Dkt. 105, at 3 (defendant Young's declaration reflecting the

6    same).  Further, plaintiff testified that during the November 12, 2015, meeting—before being

7    placed on leave—she told defendant Young that she "[felt] retaliated against" for making

8    complaints about defendant Potter's comments. Dkt. 129-1, at 87, 89.  Considering plaintiff's

9    evidence regarding the close timing of defendants Young and Potter's decision to place her on

10    paid administrative leave, a reasonable jury could find that defendants' decision was

11    substantially motivated by retaliation against plaintiff because of her complaints.  *See Stegall*,

12    350 F.3d at 1069 (Although timing alone may not be sufficient to raise a genuine issue with

13    respect to pretext, "the timing of adverse employment action can provide strong evidence of

14    retaliation.").

15           Defendants Young and Potter offer additional evidence to corroborate that their decision

16    to place plaintiff on administrative leave was reasonable and not motivated by retaliation.  *See*

17    Dkt. 266, at 6–8, 14–15 (citing outside attorney and expert opinions (Dkts. 269-5; 269-12) and

18    plaintiff's medical records (Dkts. 66, 67)).  However, this evidence—procured *after* placing

19    plaintiff on leave—introduces a competing rationale as to defendants' asserted reasons for

20    placing plaintiff on leave.  "Once the record contains reasonable but competing inferences of

21    both [retaliation] and non[retaliation], it is for the jury to decide between the competing

22    inferences."  *Edman*, 2016 WL 6836884, at *6–7; *see also Stegall*, 350 F.3d at 1072–73

23    ("[B]ecause motivations are difficult to ascertain, such an inquiry should be left to the trier of

24

1  fact[.]  [. . .]  [W]ithout a searching inquiry into these motives, those [acting for impermissible

2  motives] could easily mask their behavior behind a complex web of *post hoc* rationalizations."

3  (internal quotations omitted)).

4    Therefore, taking plaintiff and defendants' cited evidence together, and viewing the facts

5  in the light most favorable to plaintiff, a reasonable juror could conclude that defendants Young

6  and Potter's asserted reasons for placing plaintiff on paid administrative leave were pretextual or

7  substantially motivated by retaliation.  Thus, the Court finds that there are material issues of fact

8  remaining, and defendants Young and Potter have failed to demonstrate that they are entitled to

9  summary judgment as a matter of law.

10    Accordingly, the Court recommends denying defendants Young and Potter's motion for

11  summary judgment as to plaintiff's claim of retaliation under WLAD, RCW 49.60.180.

12      **B.**  **Punitive Damages**

13    Defendants Young and Potter next argue that plaintiff's request for punitive damages

14  against them be stricken or dismissed, as punitive damages are not permitted under Washington

15  State law.  *See* Dkt. 266, at 23.  The Court agrees.

16    Here, plaintiff seeks punitive damages against defendants Young and Potter based on

17  claims alleged under WLAD.  *See* Dkt. 186, at 10, 13.  However, the Supreme Court of

18  Washington State has unequivocally stated that "[p]unitive damages are unavailable under the

19  [Washington] Law Against Discrimination [], RCW 49.60."  *Dailey v. N. Coast Life Ins. Co.*,

20  919 P.2d 589, 590 (Wash.1996).  Therefore, plaintiff is foreclosed from seeking punitive

21  damages against defendants Young and Potter.

22    Accordingly, the Court recommends granting defendants Young and Potter's request to

23  dismiss plaintiff's request for punitive damages under WLAD.

24

1

## IV.    Defendant Potter's Motion for Summary Judgment

2        Defendant Potter seeks summary judgment dismissal of plaintiff's claim that he allegedly

3   discriminated against plaintiff based on her gender by failing to promote her in violation of

4   WLAD, RCW 49.60.030, .180 (Count 2).  *See* Dkt. 268.  Defendant Potter also seeks summary

5   judgment dismissal of plaintiff's claim of retaliation against him.  *Id.* at 2, 15.  The Court has

6   already addressed defendant Potter's request to dismiss plaintiff's claim of retaliation in violation

7   of WLAD based on the decision to place plaintiff on paid administrative leave.  *See supra*,

8   Section III.A.  Therefore, the Court turns to the merits of defendant Potter's motion regarding

9   plaintiff's claim of gender discrimination.

10        In her complaint, plaintiff alleges that in October 2014, she applied and interviewed for a

11   promotion and that she was the only female candidate interviewed for the position.  *See* Dkt.

12   186, at 4.  Plaintiff further alleges that defendant Potter, her supervisor, made derogatory and

13   sexist comments about plaintiff and discouraged the interview panel from selecting her for the

14   promotion.  *See id.*  Plaintiff also alleges that in December 2013, defendant Potter made sexist

15   and derogatory statements about other female employees.  *See id.* at 4–5.  Plaintiff further alleges

16   that defendant Potter disregarded the City's hiring procedures and offered the promotion to

17   defendant Young, a male, who did not apply or interview for the promotion.  *See id.* at 4.  Based

18   on the foregoing, plaintiff claims that defendant Potter discriminated against her based on her

19   gender in violation of WLAD, RCW 49.60.030, 180.  *See id.* at 8–10.

20        Regarding plaintiff's claim of discrimination, defendant Potter argues solely that he is

21   entitled to summary judgment as a matter of law because there is no evidence that his decision to

22   promote defendant Young over plaintiff was "pretext to cover up for any discriminatory intent."

23   Dkt. 268, at 5–14.  In support of his motion, defendant Potter relies on the deposition testimony

24

1  of City of Vancouver Fire Chief Joe Molina, as well as other deposition testimony and pleadings

2  of record.  *See* Dkts. 268, at 3, 5–8; 269.

3          In response, plaintiff first argues that defendant Potter's motion should be denied based

4  on the "law of the case doctrine."  Dkt. 296, at 5–6.  As discussed above, the District Court's

5  order denying defendant Potter's prior motion for summary judgment as to plaintiff's gender

6  discrimination claim does not bar the Court from considering defendant Potter's pending motion

7  for summary judgment.  *See supra*, Section III.A.  Therefore, the Court turns to plaintiff's

8  remaining arguments in opposition to defendant Potter's motion for summary judgment.

9          Plaintiff next argues that there are genuine issues of material fact regarding pretext and

10  defendant Potter's asserted reasons for deciding to promote defendant Young over plaintiff.  *See*

11  Dkt. 296, at 8–9, 19–23.  Under WLAD, an employer may not discriminate against an employee

12  in compensation or in other terms or conditions of employment, including job promotions,

13  because of the employee's gender.  *See* RCW 49.60.180(3); *Fulton v. State, Dep't of Soc. &*

14  *Health Servs.*, 279 P.3d 500, 508 (Wash. App. Ct. 2012).  Claims of discrimination under

15  WLAD are analyzed under the burden shifting framework articulated in *McDonnell Douglas*,

16  411 U.S. 792.  *See supra,* Section III.A; *Mikkelsen v. Pub. Util. Dist. No.1 of Kittitas Cty.*, 404

17  P.3d 464, 470 (Wash. 2017); *see also Erickson v. Biogen, Inc.*, 417 F. Supp. 3d 1369, 1378

18  (W.D. Wash. 2019) (citations omitted).

19          Under the *McDonnell Douglas* framework, defendant Potter and plaintiff do not appear to

20  dispute that plaintiff has established a *prima facie* claim of gender discrimination under WLAD.

21  *See* Dkt. 268, at 3–5; *see also* Dkt. 170, at 44–45 (the District Court's prior order finding the

22  same).

23

24

1   Once plaintiff has demonstrated a *prima facie* claim of gender discrimination, the burden

2   shifts to the defendant to articulate a legitimate, non-discriminatory reason for failing to promote

3   plaintiff. *See Mikkelsen*, 404 P.3d at 471. Here, the parties do not appear to dispute that

4   defendant Potter has proffered legitimate, non-discriminatory reasons for failing to promote

5   plaintiff—that he selected defendant Young over plaintiff for the promotion because he believed

6   defendant Young was the best for the position and because he was faced with a "split

7   recommendation" from interview panels. *See* Dkts. 170, at 44; 268, at 4–5; 296, at 8, 19.

8   Therefore, the Court turns to the disputed issue of pretext.

9   At the third and final step in the *McDonnell Douglas* burden shifting analysis, a plaintiff

10  must produce sufficient evidence that the defendant's alleged non-discriminatory reason for his

11  employment action was a pretext for a discriminatory purpose. *See Scrivener*, 334 P.3d at 546.

12  A plaintiff may satisfy "the pretext prong" by "offering sufficient evidence to create a genuine

13  issue of material fact either (1) that the defendant's reason is pretextual or (2) that although the

14  [defendant]'s stated reason is legitimate, discrimination nevertheless was a substantial factor

15  motivating the [defendant]." *Id.* To overcome summary judgment, a plaintiff need only show

16  that "discrimination was a substantial factor in an adverse employment action, not the only

17  motivating factor." *Id.*; *see also Mikkelsen*, 404 P.3d at 528 ("To overcome summary judgment,

18  the plaintiff needs to show only that a reasonable jury could find that discrimination was a

19  substantial factor in the employer's adverse action."). As discussed above (*see supra*, Section

20  III.A), although the evidentiary burden on plaintiff at the pretext stage of the analysis remains

21  relatively low, she must produce evidence in addition to evidence relied upon in establishing her

22  *prima facie* claim of gender discrimination. *See Stegall*, 350 F.3d at 1069; *see also Scrivener*,

23  334 P.3d at 546 ("An employee does not *need* to disprove each of the employer's articulated

24

1  reasons to satisfy the pretext burden of production" at summary judgment.  (emphasis in

2  original)).  "Summary judgment for an employer is seldom appropriate in employment

3  discrimination cases because of the difficulty of proving discriminatory motivation.  [] When the

4  record contains reasonable but competing inferences of both discrimination and

5  nondiscrimination, the trier of fact must determine the true motivation." *Mikkelsen*, 404 P.3d at

6  527–28 (internal quotations and citations omitted).

7       Here, defendant Potter argues that there is no evidence establishing that his asserted

8  reasons for failing to promote plaintiff were "pretext to cover up for discriminatory intent."  Dkt.

9  269, at 5–11.  Defendant Potter relies on the undisputed deposition testimony of Chief Molina

10  that defendant Potter never made any derogatory comments about plaintiff to an interview panel

11  and that plaintiff otherwise "performed poorly" during her interview with the interview panel.

12  Dkt. 268, at 6–7 (citing Dkt. 269-4, at 26, 28).  Defendant Potter further argues that in light of

13  Chief Molina's testimony, plaintiff cannot otherwise produce evidence that her gender was a

14  "substantial factor" in defendant Potter's decision to promote defendant Young over plaintiff.

15  *See id.* at 11–14.

16       However, plaintiff argues that Chief Molina's deposition testimony "does not erase"

17  genuine issues of material fact regarding defendant Potter's reasons for failing to promote

18  plaintiff.  Dkt. 296, at 19–23.  During his deposition, Chief Molina testified that defendant Potter

19  did not make sexist comments about plaintiff to one of the two interview panels during the

20  recruitment process.  Dkt. 269-4, at 27–28.  However, Chief Molina also testified that the hiring

21  process in this case "was an unusual process" because defendant Young "wasn't a candidate."

22  *Id.* at 14; *see also* Dkt. 297-10, at 8–9 (Chief Molina's additional testimony that this "was

23  unusual in the [recruitment] processes" and that he "just [felt] like you get the position in a more

24

1    credible way when you go through the process.").  Although defendant Potter argues that his

2    decision to promote defendant Young over plaintiff was within the City's recruitment guidelines

3    (*see* Dkt. 268, at 9), defendant Molina's testimony regarding the unusual process followed in this

4    case supports an inference that defendant Potter's decision may have been improperly motivated.

5    And defendant Potter offers no additional evidence to show otherwise.

6         Plaintiff further cites Chief Molina's testimony that during the interview process,

7    defendant Potter sought support of the all male interview panel to oppose the promotion of

8    plaintiff—the only female applicant.  *See* Dkt. 296, at 22.  Chief Molina testified that defendant

9    Potter informed him that a separate interview panel was going to recommend plaintiff for the

10   promotion, but that "[defendant Potter] just said [. . .] so whoever I pick, I'm going to need—I'm

11   going to need your support if it's not [plaintiff]."  Dkt. 297-10, at 5–6.  Chief Molina further

12   testified that he understood defendant Potter's statement "to mean that [defendant Potter] was

13   going to have an office that was going to be disappointed [. . .] if he selected anybody but

14   [plaintiff].  [. . .]  And therefore, he would need, you know, as a management team we tried to

15   support each other when one of us was going through something[.]"  *Id.* at 7.  Although

16   defendant Potter argues that there is no evidence to suggest that he "tried to rally" interview

17   panel members to reject plaintiff's promotion (Dkt. 298, at 11–12), defendant Molina's

18   testimony could suggest otherwise.

19        Plaintiff further argues that defendant Potter's asserted reason for selecting defendant

20   Young over plaintiff—that there was a split recommendation between plaintiff and another male

21   candidate (Dan Lloyd)—is also questionable based on Chief Molina's testimony.  *See* Dkt. 296,

22   at 23.  In his own deposition, defendant Potter testified that he first believed that defendant

23   Young should be promoted over plaintiff when he "was presented with a dilemma" of split

24

1    recommendations between plaintiff and Mr. Lloyd for the promotion.  Dkt. 103-5, at 16; *see also*

2    Dkt. 268, at 3.  However, Chief Molina testified that "there wasn't a consensus" and that there

3    were "other candidates that [the interview panel] felt strongly about."  Dkt. 297-10, at 10.

4    Plaintiff's cited evidence calls into question the factual accuracy of defendant Potter's asserted

5    reasons for selecting defendant Young over plaintiff.

6         Finally, plaintiff argues that defendant Potter's prior derogatory comments about female

7    employees supports the inference that he did not respect women in the workplace.  *See* Dkt. 296,

8    at 19 (citing Dkt. 170, at 44 (the District Court's prior finding regarding the same)).  Here,

9    plaintiff cites evidence that in December 2013, defendant Potter made a comment about a female

10   employee "with the big tits."  Dkt. 129-1, at 40; *see also* Dkt. 103-6, at 12 (defendant Potter's

11   deposition testimony reflecting the same); Dkt. 297-3, at 7–9 (reflecting the same, as well as

12   other derogatory comments about female employees).

13        Defendant Potter argues that this single remark about another female employee does not

14   create a material issue of fact that his decision to promote defendant Young over plaintiff was

15   substantially motivated by gender.  *See* Dkt. 268, at 11–12.  However, this remark, considered

16   with other circumstantial evidence, is probative of discriminatory intent.  *See Scrivener*, 334 P.3d

17   at 548 ("Whether or not these statements alone would be sufficient to show either pretext or that

18   [plaintiff's gender] was a substantially motivating factor, they are circumstantial evidence

19   probative of discriminatory intent."); *see also Shokri v. Boeing Co.*, 311 F. Supp. 3d 1204, 1214

20   (W.D. Wash. 2018) (noting that courts may "discount" stray remarks that are not connected to an

21   adverse employment action, but that the remarks are not "irrelevant" in considering any

22   discriminatory animus against a plaintiff based on a protected characteristic).  Thus, defendant

23   Potter's prior statement supports an inference that he did not respect women in the workplace.

24

1    Therefore, considering plaintiff's proffered evidence, and viewing the facts in the light

2    most favorable to her, a reasonable jury could conclude that defendant Potter's decision to

3    promote defendant Young over plaintiff was pretextual or substantially motivated by the

4    plaintiff's gender.  Thus, the Court finds that there are material issues of fact remaining, and

5    defendant Potter has failed to demonstrate that he is entitled to summary judgment as a matter of

6    law.

7    Accordingly, the Court recommends denying defendant Potter's motion for summary

8    judgment as to plaintiff's claim of gender discrimination under WLAD, RCW 49.60.030, .180.

9    **V.    Defendant Holmes' Joinder**

10    Defendant Holmes joins in defendant Potter's motion for summary judgment (Dkt. 268)

11    and requests summary judgment dismissal of plaintiff's claim of gender discrimination in

12    violation of WLAD (Count 2) based on the failure to promote plaintiff.  *See* Dkt. 270, at 2–3.

13    Plaintiff did not file any response to defendant Holmes' joinder.  *See* Dkt.

14    Defendant Holmes argues that if plaintiff's claim of gender discrimination against

15    defendant Potter fails, plaintiff's claim against defendant Holmes' must also fail.  *See id.* at 3.

16    Defendant Holmes states that he was not involved in the decision to promote defendant Young

17    over plaintiff and that defendant Potter was the ultimate decisionmaker.  *See id.* at 2 (citing Dkt.

18    101-1 (defendant Holmes' deposition testimony); Dkt. 101-2 (defendant Potter's deposition

19    testimony)).  However, defendant Holmes' notes that the District Court previously denied

20    summary judgment as to plaintiff's claim against him, finding genuine issues of material fact as

21    to (1) defendant Holmes' decision to delegate the decision-making authority to defendant Potter,

22    and (2) defendant Holmes' decision not to object to defendant Potter's plan to abandon the

23

24

1 | interview and appointment process and promote defendant Young over plaintiff. *See* Dkts. 170,

2 | at 24, 27; 270, at 2.

3 | As discussed above, the Court recommends denying defendant Potter's motion for

4 | summary judgment. *See supra*, Section IV.  Because the court has previously denied defendant

5 | Holmes' motion for summary judgment, and defendant Holmes' only other argument for

6 | summary judgment is premised upon the success of defendant Potter's motion (*see* Dkt. 270, at

7 | 2–3), the Court recommends denying defendant Holmes' request to dismiss plaintiff's claim of

8 | gender discrimination in violation of WLAD, RCW 49.60.030, 180.

9 | **CONCLUSION**

10 | For the reasons discussed herein, the Court recommends the following:

11 | 1.      Defendant City's partial motion for summary judgment (Dkt. 260) should be

12 | **GRANTED** in part and **DENIED** in part.  Plaintiff's claim of deprivation of a liberty

13 | interest in violation of the Fourteenth Amendment (Count 7) should be dismissed with

14 | prejudice;

15 | 2.      Plaintiff's partial motion for summary judgment (Dkt. 262) should be **DENIED**.

16 | Additionally, defendant Holmes' brief in opposition (Dkt. 292) to plaintiff's motion for

17 | summary judgment should be stricken;

18 | 3.      Defendant Young's motion for summary judgment (Dkt. 266) should be

19 | **GRANTED** in part and **DENIED** in part.  Plaintiff's request for punitive damages

20 | against defendants Young and Potter should be dismissed;

21 | 4.      Defendant Potter's motion for summary judgment (Dkt. 268) should be **DENIED**;

22 | and

23 |

24 |

1     5.     Defendant Holmes' joinder and request for summary judgment (Dkt. 270) should

2  be **DENIED**.

3     Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4  fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

5  6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

6  review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

7  of those objections for purposes of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

8  *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).  Accommodating the time limit

9  imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **June 25,**

10  **2021,** as noted in the caption.

11     Dated this 9th day of June, 2021.

12

13                             J. Richard Creatura

14                             Chief United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 40